(No. 55037.—

GENERAL ELECTRIC COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Donna Williamson, Appellee).

*Opinion filed March 16, 1982.*

Dukes, O'Rourke, Stewart, Martin & Helm, Ltd., of Danville (John F. Martin, of counsel), for appellant.

James C. Serkland, of Scheele, Serkland & Boyle, Ltd., of Chicago, for appellee.

JUSTICE SIMON delivered the opinion of the court:

The circuit court of Vermilion County confirmed an award of the Industrial Commission against the challenge of the employer, General Electric Company, and the employer appeals.

The first issue is whether the claimant's condition was

caused by an accident related to her work with this employer. While working for another employer 10 years earlier, she developed a wrist problem known as carpal tunnel syndrome, had a surgical procedure called carpal tunnel release, and received a compensation award. Her latest job was with G.E. It consisted of picking up coils weighing about three pounds each, inserting them in a machine for processing, and removing them, by which time they would weigh about seven pounds. When she began the job, she could do it without difficulty and in general had no problem with her arm, but after a few months her arms started giving her some trouble at work. One day she felt a sharp pain in her wrist while picking up a coil, and she reported to the nursing station. She continued working for several months with the help of a wrist bandage, and her condition worsened until she could no longer do her job. She had once more developed carpal tunnel syndrome and required more surgery.

From these facts and the medical evidence, the Commission could properly find that the claimant's condition was not simply a natural recurrence of her old problem, but the result of a new, work-related injury. She may have started the job with a weaker wrist than most people, but employers take their employees as they find them (*Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 177). When workers' physical structures, diseased or not, give way under the stress of their usual tasks, the law views it as an accident arising out of and in the course of employment. (*Doyle v. Industrial Com.* (1981), 86 Ill. 2d 544; *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17.) Even if the ultimate collapse of the claimant's wrist may have been only the high point in a series of repetitive job-related stresses on her body, the Commission could properly find that her condition was the result of an accident within the meaning of the Workmen's Compensation Act. See *Perkins Products Co. v. Industrial Com.*

(1942), 379 Ill. 115.

The employer emphasizes the claimant's inability to remember the exact date of her accident. The date, however, was established by the employer's records.

To the extent G.E.'s argument on these points is directed to discrediting the claimant's testimony, we can only observe, as we have scores of times, that matters of causation and other facts, especially matters of credibility, are for the Industrial Commission, and we will not set aside the Commission's decision unless it is against the manifest weight of the evidence. It is not our province to reweigh the evidence.

The perplexing issue in this case is the proper measure of compensation for the disability remaining after the period of temporary total incapacity. The arbitrator's award was for 20% loss of use of a hand. The Industrial Commission, instead, awarded compensation based on earnings loss, under section 8(d)(1) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(d)(1)). That is, as a result of her injury, the claimant could not return to her job with G.E., but was able to get other work that did not strain her hands as much and did not pay as well. The Commission's award was based on the difference between what she earned before her accident and what she earned after she recovered from surgery. G.E. argues that such an award was improper, that the claimant should instead have received some percentage of a scheduled award under section 8(e), for permanent partial loss of use of a hand or arm.

Section 8(e) begins:

> "For accidental injuries in the following schedule, the employee shall receive compensation for the period of temporary total incapacity *** and shall receive in addition thereto compensation for a further period for the specific loss herein mentioned, *but shall not receive any compensation under any other provisions of this Act.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(e).)

However, in *Springfield Park District v. Industrial Com.* (1971), 49 Ill. 2d 67, this court held that the italicized language did not establish section 8(e) as the exclusive remedy for all scheduled injuries, but was intended only to prevent double recovery; that is, if a claimant receives an award under section 8(e), he is not eligible for any other compensation except for temporary total incapacity. In particular, *Springfield Park District* held that if an injury listed in section 8(e) permanently and completely disables an employee for work, he is entitled to a total disability award under section 8(f) (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(f)).

In *Pruiett v. Industrial Com.* (1976), 65 Ill. 2d 240, on the other hand, this court barred recovery under section 8(d) for earnings loss in cases of scheduled injuries not producing total disability, holding that recovery was to be exclusively under section 8(e). The reasoning of *Pruiett* was that section 8(d), as it then read, expressly applied "except in cases covered by the specific schedule" of paragraph (e) (Ill. Rev. Stat. 1971, ch. 48, par. 138.8(d)).

The Act, however, has been amended since the accident that was the subject matter of *Pruiett*. The exception that formerly read "except in cases covered by the specific schedule" has been changed to read "except in cases *compensated under*" paragraph (e) (emphasis added) (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(d)(1)). This court has never interpreted the new language.

The change in language must have been intended to change the law, especially because the same act that effected the change (Pub. Act 79–79) also added a new provision to section 8(d), namely section 8(d)(2), dealing with serious and permanent injuries "not *covered by*" paragraphs (c) and (e) (emphasis added) (1975 Ill. Laws 224, 252). The legislature did not simply like the sound of "compensated" better than "covered"; it continued to use "covered" when it meant "covered," but amended section

8(d)(1) to use a different word. The obvious meaning of section 8(d)(1)'s amended language ("except in cases *compensated under*" paragraph (e) (emphasis added)) is that compensation under section 8(d)(1) is barred only if compensation is actually awarded under section 8(e), not simply because an injury is listed in the schedule as compensable under paragraph (e). Compensation may be proper under either section, though not both at once.

The change in the law accomplished by this amendment is in line with a nationwide trend. Professor Larson summarizes:

> "Although it is difficult to speak in terms of a majority rule on this point, because of significant differences in statutory background, it can be said that at one time the doctrine of exclusiveness of schedule allowances did dominate the field. But in recent years there has developed such a strong trend in the opposite direction that one might now, with equal justification, say that the field is dominated by the view that schedule allowances should not be deemed exclusive ***." 2 A. Larson, Workmen's Compensation sec. 58.23, at 10–257 (1981).

This trend is supported by sound reasons. Scheduled awards are often not fair. For example, partial loss of use of a finger may be an annoyance to some workers, but a catastrophe for a violinist. Nor are scheduled allowances always fast and certain. It is often easier to calculate how much a claimant's earnings have decreased since the accident than to assign a percentage partial loss of use. Exclusive scheduled awards cannot be justified as a kind of liquidated damages, an unchallengeable estimate of earnings loss. Rather, the schedule represents a presumed minimum loss, looking toward the uncertainties of future employment prospects. The law recognizes that the loss of a body part will probably catch up with a worker sooner or later, even if his current work happens to be only slightly impeded by the injury. The worker is allowed to recover the scheduled amount without having to demon-

strate how the expected eventual loss of earnings will come about. If, however, he can prove an actual loss of earnings greater than the schedule presumes, there is no reason why he should not recover that loss. In theory, the basis of the workers' compensation system should be earnings loss, not the schedule.

We conclude that the Act, as amended, authorizes awards under section 8(d)(1) even for injuries enumerated in section 8(e). The Industrial Commission's decision to award compensation under section 8(d) was not improper.

The final issue is the employer's demand for a deduction for the claimant's partial disability from her earlier accident. The employer, however, failed to establish, except by guesswork, what the earlier finding of partial disability was. Moreover, G.E. relies on section 8(e)(17), which, as it more or less concedes, does not apply to awards under section 8(d)(1), such as this one. The award is based on the claimant's earnings just before the present accident, not on what she might have earned had she never had the previous accident. Her entire earnings loss, so calculated, may fairly be attributed to the latest accident.

The judgment is affirmed.

*Judgment affirmed.*