INTERLAKE STEEL, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (John Anderson, Appellee).

First District (Industrial Commission Division)   No. 1—84—0500WC

Opinion filed January 16, 1985.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Robert E. Maciorowski, of counsel), for appellant.

Kleiman and Whitney, of Chicago (Kenneth B. Wolfe, Jr., of counsel), for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

John Anderson filed an application for adjustment of his claim under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par.

138.1 *et seq.*) for injuries suffered while he was employed by Interlake Steel, Inc. (Interlake). An arbitrator awarded Mr. Anderson benefits for permanent partial disability and medical expenses. The Industrial Commission affirmed the award of the arbitrator, and the circuit court of Cook County confirmed the decision of the Industrial Commission.

On appeal Interlake raises two issues: (1) whether the decision of the Industrial Commission that Mr. Anderson sustained an injury arising out of and in the course of his employment by Interlake was against the manifest weight of the evidence; and (2) whether the Industrial Commission committed a breach of its statutory duty under section 19(e) of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(e)) to review the decision of the arbitrator.

Mr. Anderson's original application for adjustment of claim alleged that Mr. Anderson sustained injuries on or about October 15, 1979. A subsequent amended application for adjustment of claim alleges that Mr. Anderson's injury occurred on October 22, 1979.

Mr. Anderson testified before the arbitrator. He stated that he worked as a pipefitter for Interlake and that, during October 1979, his work involved installing butterfly valves which weighed between 150 and 200 pounds. Mr. Anderson related that on October 1, 8, 15 and 22, 1979, he installed butterfly valves with a co-worker. Mr. Anderson described in detail the method used to install the butterfly valves and indicated that the installation which occurred on October 1, 1979, was different from the other installations because it was necessary for him to work in a cramped position, which caused him to get a cramp in his left leg. He stated that he did not report this incident to his foreman. Mr. Anderson testified that he continued to work but felt the pain in his leg becoming progressively worse and, after installing a butterfly valve on October 22, 1979, felt the pain extend up into the lower part of his back.

Mr. Anderson testified that he first went to Interlake's nurse on October 23, 1979, and complained about the pain in his leg and his back. He told the nurse, "I think I strained myself when I was installing these butterfly valves." The nurse gave Mr. Anderson some pain pills and suggested that he visit the company doctor. Mr. Anderson went to see Interlake's doctor, Dr. Charles F. Kramer, on October 25, 1979. Dr. Kramer recommended that Mr. Anderson see his family physician. A few days later, Mr. Anderson went to see a chiropractor at Achilly Chiropractic Clinic, Ltd., and was treated for a period of six weeks.

Mr. Anderson was next treated by Dr. Howard Schneider, an or-

thopedic surgeon, on December 7, 1979. Dr. Schneider's initial diagnosis, as indicated by a letter he sent to Interlake's insurance department, was that Mr. Anderson suffered from a "ruptured pulposus, lower lumbar area." Dr. Schneider placed Mr. Anderson in the hospital for 10 days. Sometime later, on January 13, 1980, Mr. Anderson was again hospitalized for a myelogram. After reviewing Mr. Anderson's myelogram, Dr. Schneider informed Interlake that "I do feel that [Mr. Anderson] has a ruptured lumbar disc at the L-4 level left and have recommended surgery, laminectomy with decompression of the nerve root." Mr. Anderson testified that he subsequently went to see two other doctors concerning his back condition.

Robert Leonard Keyl, a co-worker of Mr. Anderson who had helped Mr. Anderson install butterfly valves in October 1979, testified that Mr. Anderson had complained of pain in his legs during the installation of the butterfly valves.

David A. Fisher, Mr. Anderson's foreman, testified for Interlake. Mr. Fisher said that sometime around October 22, 1979, Mr. Anderson informed him that his leg was bothering him. According to Mr. Fisher, Mr. Anderson said he did not know what was wrong with his leg but indicated that his leg was sore. Mr. Fisher said that he referred Mr. Anderson to Interlake's first-aid department. Mr. Fisher testified that a couple of days later Mr. Anderson again requested to see the company nurse or doctor because his leg was sore. Again, Mr. Fisher sent Mr. Anderson to the first-aid department. Mr. Fisher testified that about October 28, 1979, Mr. Anderson again requested to see the company doctor and indicated for the first time that he thought he had been injured while performing a job. Mr. Fisher further testified that Mr. Anderson returned to work at Interlake in April 1980 and has worked overtime since then.

Dr. Kramer, Interlake's doctor, also gave testimony before the arbitrator on behalf of Interlake. Dr. Kramer stated that Mr. Anderson had been treated for a back strain in March 1966 and was treated for lumbar myalgia in late December 1972. Dr. Kramer said that Mr. Anderson came to see him on October 23, 1979, and stated that about a month earlier he had performed a job in a cramped position and noticed pain in his left leg. Dr. Kramer said he again saw Mr. Anderson on October 25, 1979, and recommended to Mr. Anderson that he see his personal physician. Mr. Anderson next visited Interlake's first-aid department on March 26, 1980, when he returned to work. According to Dr. Kramer, he examined Mr. Anderson at that time and found no abnormalities regarding Mr. Anderson's back.

The arbitrator found that Mr. Anderson's back problem for which

he was treated "commenced contemporaneously with installation of the butterfly valve on October 1, 1979, and became progressively more severe as he continued to work through the month of October, 1979." The arbitrator awarded Mr. Anderson compensation from October 22, 1979. The Industrial Commission affirmed the arbitrator's decision in a decision which read, in part, as follows:

"DECISION AND OPINION ON REVIEW

*** The Commission has considered the entire record and Oral Arguments held before a majority of the Commission on October 20, 1982.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Commission adopts the Arbitrator's findings, for the following reasons:

The Arbitrator saw the Petitioner and the witness, heard all the evidence, and made specific findings, which the Commission hereby adopts (attached).

No evidence was presented on Review and the Commission did not see the Petitioner.

Based on the above, the Commission has no reason to change the Decision of the Arbitrator."

Interlake first suggests that Mr. Anderson failed to prove that he suffered an injury related to his employment. Specifically, Interlake maintains that Mr. Anderson's work activities, which included bending and climbing, posed no risk peculiar to his employment and that Mr. Anderson failed to establish that his injury was attributable to a specific time, place and cause.

■■ Mr. Anderson urges that his testimony sufficiently showed that the installation of butterfly valves constituted a danger of injury peculiar to the work. Mr. Anderson also maintains that he adequately established a specific time, place and cause of his injury.

In order to be compensable, an injury must "arise out of" an employee's employment; therefore, it must have its origin in some risk connected with or incident to the employment so that there is a causal connection between the employment and the injury. When an injury results from a danger to which the employee would have been equally exposed apart from the employment, that injury cannot be said to arise out of the employment. (*Greene v. Industrial Com.* (1981), 87 Ill. 2d 1, 4, 428 N.E.2d 476, 477.) However, Interlake's reliance on this rule is misplaced in the context of the case at bar. Here, Mr. Anderson testified that he felt a pain in his leg while he was installing butterfly valves and described in detail the procedure for such installation. Basically, Mr. Anderson and a co-worker were required to pull

out a 150- to 200-pound butterfly valve and replace it with another. It is obvious that the danger of injury inherent in this procedure is not the type to which the general public is exposed. The cases relied upon by Interlake are readily distinguishable in that they involve dangers to which the general public is exposed without regard to any employment, such as a criminal attack upon the petitioner in the employer's parking lot (*Greene v. Industrial Com.* (1981), 87 Ill. 2d 1, 428 N.E.2d 476); the petitioner being injured in the employer's parking lot by a malfunctioning automobile being operated by the petitioner's wife (*Rogers v. Industrial Com.* (1980), 88 Ill. 2d 221, 414 N.E.2d 744); the petitioner closing an automobile door on his own hand in the employer's parking lot (*Jones v. Industrial Com.* (1980), 78 Ill. 2d 284, 399 N.E.2d 1314); or the petitioner being injured while getting up from a chair (*County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, 368 N.E.2d 1292). In the instant case, the record establishes that Mr. Anderson's injury arose out of his employment.

Interlake also urges that Mr. Anderson failed to establish a specific time, place, and cause of his injury. Basically, Interlake's argument in this regard is directed toward discrediting Mr. Anderson's testimony. Interlake makes much of the fact that Mr. Anderson told Interlake personnel that he "thought" he injured himself while installing butterfly valves. Mr. Anderson explained his choice of words on cross-examination. He said, "I couldn't be definite. I didn't come out and say 'I injured my back.' I didn't even know it was my back at the time." We reject Interlake's characterization of the language Mr. Anderson utilized to initially report his injury as not being specific in detail. The meaning to be afforded to Mr. Anderson's choice of words when he reported his injury to Interlake is a matter of credibility and of the weight of the evidence. It is the peculiar province of the Industrial Commission to determine the credibility of witnesses and determine the weight to be given to the evidence. *Berry v. Industrial Com.* (1984), 99 Ill. 2d 401, 405, 459 N.E.2d 963, 965.

Furthermore, as Mr. Anderson points out, when a worker's physical structure gives way under repetitive job-related stresses on the body, the injury is considered to arise out of and in the course of employment. (*General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 434, 433 N.E.2d 671, 672.) Mr. Anderson testified that he first noticed a pain in his leg when he installed a butterfly valve on October 1, 1979, and that the pain became progressively worse upon further installations of butterfly valves in October, the last one occurring on October 22, 1979. The arbitrator and Industrial Commission properly could have concluded that Mr. Anderson's injury resulted from

repetitive trauma caused during the installation of butterfly valves, and such a finding would not be contrary to the manifest weight of the evidence.

■ We reject Interlake's final assertion that the Industrial Commission failed to comply with section 19(e) of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(e)) in that it committed a breach of its statutory duty to review the decision of the arbitrator. Interlake argues that "[i]t appears from the language of the Decision on Review that they [the Industrial Commission] breached their duty in that they affirmed the Arbitrator's decision on the basis that no evidence was presented on Review and that the Commission did not see the petitioner." Thus, Interlake apparently questions the propriety of the Industrial Commission's actions in entering its decision without hearing additional evidence or viewing petitioner. However, whether additional evidence should be heard by the Industrial Commission in a proceeding to review an award made by an arbitrator is a question within the sound discretion of the Industrial Commission. (*Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475, 479, 312 N.E.2d 593, 595.) We conclude, further, that there is no obligation, either by statute or the decided cases, that the Industrial Commission require a petitioner to appear before it before it may arrive at its decision. We find no abuse of discretion in the instant case. Interlake's argument that the Industrial Commission improperly reviewed the arbitrator's decision appears to rest upon an unfounded presumption that the Industrial Commission, contrary to its specific statement that it "considered the entire record," did not base its decision on the evidence before it. We find nothing in the record which supports Interlake's contention in this regard. Furthermore, should Interlake be assumed to base its objection on an assertion that the Commission adopted the conclusions and decision of the arbitrator without arriving at independent conclusions or a decision of its own, the record does not warrant such an assertion. We find no error in this regard.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WEBBER, P.J., and BARRY, LINDBERG, and McNAMARA, JJ., concur.