BUTLER MANUFACTURING COMPANY, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Randall Vaughn, Appellee).

Third District (Industrial Commission Division)   No. 3—85—0207WC

Opinion filed January 17, 1986.

Thomas G. West, of West, Neagle & Williamson, of Galesburg, for appellant.

Kenneth B. Wolfe, Jr., of Kleiman & Whitney, P.C., of Chicago, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Randall Vaughn filed an application for adjustment of his claim under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) for back injuries suffered while he was employed by Butler Manufacturing Company (Butler). An arbitrator awarded Mr. Vaughn benefits for temporary total disability, permanent partial disability and medical expenses. With one commissioner dissenting, the Industrial Commission affirmed the award of temporary total disability and medical expenses and increased the amount of permanent partial disability benefits. The circuit court of Knox County confirmed the decision of the Industrial Commission, and Butler has appealed to this court.

Butler maintains on appeal that the Industrial Commission's decision should be reversed because Mr. Vaughn failed to (1) demonstrate that he sustained a work-related accidental injury, and (2) give adequate notice of his injury to Butler.

Mr. Vaughn testified at the hearing before the arbitrator as follows: During April 1980, he was 25 years of age and was working for Butler, as he had for the previous 7½ years. His employment duties included picking up parts used to construct steel buildings, placing those parts into push carts to be transported to a loading area, and placing the parts into crates. The parts varied in weight from several ounces to more than 200 pounds. On Thursday, April 24, 1980, at approximately 8 a.m., Mr. Vaughn started experiencing pain in his left hip and lower back. Although he could not remember exactly what he was doing when the pain started, Mr. Vaughn stated that the pain began while he was performing his usual employment duties.

Mr. Vaughn further testified that as the day progressed he continued to experience pain and he started to walk with a slight limp and his shoulders "were shifted." Although he informed some of his fellow employees of the pain that he was experiencing, Mr. Vaughn continued to work on Thursday and worked all day on Friday. He did not report the incident to his supervisors and did not seek medical atten-

tion at the first aid department.

On the following Monday, April 28, 1980, Mr. Vaughn sought medical care from his family physician, Dr. Prakash Khot. Handwritten notes prepared by Dr. Khot indicate that Mr. Vaughn informed him on April 28, 1980, that he had experienced back pain since Wednesday, April 23, 1980, and had "experienced pain while bending over a bathtub" in his home on Saturday, April 26, 1980. Dr. Khot admitted Mr. Vaughn to a Galesburg hospital on April 28, 1980. According to Mr. Vaughn, he had a telephone conversation with Butler's plant nurse later that day, informing her that he was hospitalized due to back pain which had started while he was at work on the previous Thursday.

Mr. Vaughn's testimony and the medical records introduced at the hearing indicate that Mr. Vaughn was treated in the hospital by Dr. Khot and by Dr. Duane Willander, an orthopedic surgeon. On May 5, 1980, Dr. Willander performed a laminectomy on Mr. Vaughn to remove a herniated disc.

Mr. Vaughn introduced medical records which had been prepared by Dr. Khot, Dr. Willander, and Dr. Stephen Weiss, an orthopedic surgeon who examined Mr. Vaughn on October 15, 1980. These records do not contain an opinion of any of the doctors as to the cause of petitioner's injuries. However, the medical records indicate that Mr. Vaughn told each of the doctors that he began experiencing back pain while at work on or about April 24, 1980.

Mr. Vaughn admitted that he was hospitalized for four days in 1978 as a result of back pain and that he strained a muscle in his back in 1979 while rinsing out his bathtub. Mr. Vaughn further testified that both he and Dr. Khot indicated on a May 12, 1980, group health insurance form that, although the symptoms first appeared about April 23, 1980, it was "unknown" whether the injuries sustained by Mr. Vaughn were work-related. A group health insurance form completed on November 7, 1980, indicated that his injuries resulted from an accident occurring at Butler's place of business and were work-related.

Donald Stokes, who worked in the same department as Mr. Vaughn, testified that on April 24, 1980, he observed Mr. Vaughn pick up a keg of bolts weighing between 200 and 250 pounds. As he lifted the keg, Mr. Vaughn "made a groaning noise" and Stokes told him that he should not try to pick up the keg. Stokes later observed Mr. Vaughn walking in a stiff manner and "slumping to one side." Stokes told his fellow employees about the incident, but he did not inform his supervisors.

Two of Mr. Vaughn's supervisors testified on behalf of Butler.

Louise Wilder, an assistant foreman in Mr. Vaughn's department, testified that she had conversations with Mr. Vaughn during April 1980 concerning his job performance. During a "major conversation" on April 23, 1980, Ms. Wilder informed him that she did not approve of his habit of sitting on his push cart when he lifted parts from low shelves. Mr. Vaughn informed Ms. Wilder that he sat on the cart because of a back problem which made it difficult for him to bend down to low shelves and lift parts. Ms. Wilder also testified that Mr. Vaughn did not report the April 24, 1980, incident to her.

Warren Messmore, the foreman of Mr. Vaughn's department, testified that after Ms. Wilder informed him of Mr. Vaughn's habit of sitting on his car while lifting parts from low shelves, he discussed this habit with Mr. Vaughn on April 23, 1980. Mr. Vaughn informed him that he sat on the push cart because his doctor had recommended that he "refrain from bending, twisting, and lifting" due to a back problem. Although Mr. Vaughn and Mr. Messmore had another conversation on April 25, 1980, Mr. Vaughn did not report the April 24, 1980, incident to Mr. Messmore.

Butler also introduced certain records prepared by Dr. Willander which indicate that (1) Mr. Vaughn called Dr. Willander on June 2, 1980, and informed him that an individual in Dr. Khot's office told Mr. Vaughn to call Dr. Willander so that Dr. Willander could "declare this industrial," and (2) Dr. Willander told Mr. Vaughn that he would fill in the medical portions of any reports but that he was not the one who determined whether Mr. Vaughn's injuries resulted from an industrial accident.

■ Butler initially notes on appeal that although the Industrial Commission did not determine a specific time, place or occurrence which caused Mr. Vaughn's injuries, the Industrial Commission allowed Mr. Vaughn to recover because his "job requirements of lifting and bending constituted a repetitive trauma which on April 24, 1980, aggravated his preexisting back condition." Butler argues that the Industrial Commission's decision must be reversed because the theory of "repetitive trauma" has not been applied to allow recovery for back injuries.

It is well established in Illinois that when a worker's physical structures give way under the repetitive stresses of their usual work tasks, the law views it as an accident arising out of and in the course of employment. *General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 434, 433 N.E.2d 671, 672.

This court discussed the theory of repetitive trauma in the case of *Interlake Steel, Inc. v. Industrial Com.* (1985), 130 Ill. App. 3d 269,

474 N.E.2d 402. There, the claimant was a pipefitter who testified that he experienced back pain after installing butterfly valves on October 1, 8, 15 and 22, 1979. The valves weighed between 150 and 200 pounds. In awarding compensation, the Industrial Commission adopted the finding of the arbitrator that the claimant's back injury "commenced" on October 1 and "became progressively more severe as he continued to work" through October 1979. 130 Ill. App. 3d 269, 270-72, 474 N.E.2d 402, 404-05.

On appeal, Interlake Steel argued that claimant had failed to establish a specific time, place and cause of his back injury. This court determined that the Industrial Commission properly could have concluded that either (1) claimant established a specific time, place and cause of his injury, or (2) claimant's physical structure gave way under repetitive job-related stresses on the body, resulting in specific instances of the employee experiencing pain while continuing on the job. *Interlake Steel, Inc. v. Industrial Com.* (1985), 130 Ill. App. 3d 269, 273-74, 474 N.E.2d 402, 406.

Based on the foregoing cases, it appears at first blush that the Industrial Commission properly could have awarded benefits to Mr. Vaughn based on the theory of repetitive trauma. However, we must also consider our recent discussion of the repetitive trauma theory in the case of *Peoria County Belwood Nursing Home v. Industrial Com.* (1985), 138 Ill. App. 3d 880. There, the employer argued on appeal that the claimant's injury was not an "accidental injury" under the Act because the injury could not be traced to a definite time, place and cause.

In *Belwood*, the claimant alleged that she had developed carpal tunnel syndrome in her left wrist in the course of her employment. Her employment duties consisted of sorting laundry into two 200-pound capacity washing machines. Each machine was operated six times a day and was loaded by operating a spring-loaded door into each of three compartments. The claimant, who was also required to carry laundry bags weighing from 25 to 50 pounds, testified that she had noticed pain, numbness and tingling for a substantial period of time prior to the date she sought treatment from a neurologist.

We concluded in *Belwood* that "even absent a final, identifiable episode of collapse," claimant was "accidentally injured" under the Act as a result of a gradual injury due to repetitive, work-related trauma. *People County Belwood Nursing Home v. Industrial Com.* (1985), 138 Ill. App. 3d 880, 885.

The rationale underlying the *Belwood* decision is that the Industrial Commission should award benefits based on the theory of repeti-

tive trauma if the claimant can show that a bodily structure has eroded over time to the point of uselessness as a result of employment. However, the evidence of record in the instant case, unlike the evidence in *Belwood*, does not indicate that, as a result of his employment, Mr. Vaughn's bodily structure eroded over a period of time to the point of uselessness. Accordingly, the Industrial Commission should not have awarded benefits to Mr. Vaughn based upon the theory of repetitive trauma.

■ Nevertheless, we will affirm the Industrial Commission's decision if there is any legal basis in the record which would sustain that decision, regardless of whether the particular reasons or findings contained in the decision are correct or sound. 87 Ill. 2d R. 366; see generally *Thornton v. Williams* (1980), 89 Ill. App. 3d 544, 549, 412 N.E.2d 157, 161.

In addition to the theory of repetitive trauma, a claimant may also demonstrate an "accidental injury" which is compensable under the Act by tracing a work-related injury either to a "specific accident identifiable as to time and place" or as to the "specific moment of collapse of one's physical structure, identifiable as to time and place." (*People County Belwood Nursing Home v. Industrial Com.* (1985), 138 Ill. App. 3d 880, 883.) Butler argues on appeal that Mr. Vaughn did not sustain a work-related "accidental injury" because he failed to establish a specific time, place and cause of his back injury. We do not agree.

As to the time and place of the incident, Mr. Vaughn testified that on Thursday, April 24, 1980, at approximately 8 a.m., he started experiencing pain in his left hip and lower back. Although Mr. Vaughn apparently informed Dr. Khot that he had "experienced pain while bending over a bathtub" on Saturday, April 26, the medical records prepared by the physicians who examined Mr. Vaughn indicate that he told each of them that he began experiencing back pain while at work on or about April 24. Moreover, Mr. Stokes, one of Mr. Vaughn's coworkers, testified that the incident in question occurred on or about April 24. Accordingly, the Industrial Commission properly could have concluded that the evidence introduced at the hearing sufficiently demonstrated the time and place of the incident.

Butler maintains that Mr. Vaughn failed to demonstrate that he had sustained a compensable "accidental injury" because he was unable to trace his injury to a specific work-related accident. Butler relies primarily on the case of *Banks v. Industrial Com.* (1985), 134 Ill. App. 3d 312, 480 N.E.2d 139. The *Banks* court affirmed the Industrial Commission's denial of benefits to a claimant who had alleg-

edly injured his back while lifting 75-pound bags of meat. In support of the decision, the court in *Banks* noted that (1) no witnesses other than the claimant testified that an accident had occurred, (2) no doctor testified that the accident in question had occurred or that such accident had caused claimant's pain, (3) the testimony of claimant's supervisors contradicted claimant's testimony, (4) claimant's testimony was impeached by prior inconsistent statements, and (5) claimant continued to work for three weeks after the alleged accident. *Banks v. Industrial Com.* (1985), 134 Ill. App. 3d 312, 314-18, 480 N.E.2d 139, 140-43.

In *Banks* the court also noted that the existence of a reasonable alternative explanation for a claimant's injuries is a significant factor in determining whether a particular injury is work-related. (*Banks v. Industrial Com.* (1985), 134 Ill. App. 3d 312, 315, 480 N.E.2d 139, 141.) Butler suggests the following alternative explanations for Mr. Vaughn's injury in the instant case: (1) Mr. Vaughn had a preexisting back condition which he aggravated on Saturday, April 26, 1980, while cleaning out the bathtub in his home; or (2) Mr. Vaughn fabricated the April 24, 1980, incident because he was upset with his supervisor for questioning his work habits and productivity in conversations which occurred on April 23, 1980, and April 25, 1980.

Butler maintains that the record supports the foregoing explanations of Mr. Vaughn's injury. For example, Butler notes that Mr. Vaughn testified that: (1) he had experienced back problems in 1978 and 1979; (2) although he experienced pain at approximately 8 a.m. on Thursday, April 24, 1980, he did not report to the first aid department, continued to work on Thursday and Friday and did not report the incident to his supervisor even though he had a conversation with his supervisor on Friday; (3) he told Dr. Khot that although the pain began on approximately April 23, he "experienced pain while bending over a bathtub" on Saturday, April 26, 1980; (4) he stated on a May 12, 1980, group health insurance form that it was unknown whether his injuries were work-related; (5) after he filed a workers' compensation claim, he stated on a November 7, 1980, group health insurance form that his injuries were work-related; and (6) he called Dr. Willander on June 2, 1980, and requested that Dr. Willander "declare this industrial."

■ The *Banks* case may be distinguished from the case at bar. We recognize that Mr. Vaughn testified that he was unable to remember exactly what he was doing on April 24 when the pain began. However, Mr. Vaughn stated that the pain started while he was performing his usual employment duties. Such duties included picking up

parts which were used to construct steel buildings. The evidence indicated that these parts weighed as little as a few ounces or as much as 200 pounds. We reject Butler's characterization of Mr. Vaughn's testimony as not being specific in detail. The weight to be given to the testimony of Mr. Vaughn and the meaning to be afforded to it is a matter of credibility to be determined by the Industrial Commission. *Interlake Steel, Inc. v. Industrial Com.* (1985), 130 Ill. App. 3d 269, 273, 474 N.E.2d 402, 406.

In addition, the following factors distinguish this case from the *Banks* case: (1) Mr. Vaughn's testimony was not impeached by prior inconsistent statements; (2) Mr. Vaughn consistently informed his doctors that he began experiencing pain while at work on or about April 24, 1980; and (3) Mr. Vaughn worked less than two full days after the alleged incident.

More importantly, the testimony of Mr. Vaughn's co-worker, Mr. Stokes, not only corroborated Mr. Vaughn's testimony, but also supplied further details of the April 24 incident. Mr. Stokes testified that he observed Mr. Vaughn pick up a keg of bolts weighing between 200 and 250 pounds. As Mr. Vaughn lifted the keg, Mr. Vaughn "made a groaning noise." Thereafter, Mr. Stokes observed Mr. Vaughn walking in a stiff manner and "slumping to one side."

■ After considering the record, we conclude that the Industrial Commission could properly have determined that Mr. Vaughn sustained an "accidental injury" under the Act because he traced his injury to a specific accident identifiable as to time and place. *Peoria County Belwood Nursing Home v. Industrial Com.* (1985), 138 Ill. App. 3d 880, 883.

■ As an additional ground for reversal, Butler argues that the Industrial Commission's decision must be reversed because the record indicates that Butler received inadequate notice of Mr. Vaughn's injuries.

Mr. Vaughn testified that he called Butler's plant nurse at approximately 10 a.m. on Monday, April 28, 1980, from Cottage Hospital in Galesburg and reported his injury to her. The plant nurse did not testify. Hospital records introduced into evidence indicate that Mr. Vaughn was admitted to Cottage Hospital at approximately 4:50 p.m. on April 28, 1980.

We will not disturb the Industrial Commission's decision on the basis that Butler received inadequate notice because (1) Butler does not contend that it was prejudiced by the allegedly inadequate notice, and (2) Mr. Vaughn's testimony that he called the plant nurse from the hospital at approximately 10 a.m. was not controverted and it is

not necessarily impeached by the fact that he was not admitted until 4:50 p.m. It is possible that Mr. Vaughn could have been undergoing tests in the hospital earlier in the day and called the plant nurse at that time.

For the reasons stated herein, we affirm the judgment entered by the circuit court of Knox County.

Affirmed.

WEBBER, P.J., and BARRY, LINDBERG and McNAMARA, JJ., concur.