JAMES HOEGGER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Interlake, Inc., Appellee.)

Fourth District   No. 4—86—0877WC

Opinion filed August 11, 1987.

Roger D. Lapan, of Bloomington, for appellant.

Jeremy P. Sackmann, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, James Hoegger, appeals from an order of the circuit court of Livingston County confirming the decision of the Industrial Commission denying compensation to the claimant.

At the hearing before the arbitrator, the claimant testified as follows. Claimant was employed by Interlake, Inc. He worked the 4 p.m. to 12 p.m. shift, usually with Rick Smith, another employee. They worked on an automatic beam-welder. Claimant's job required him to take material off as it was welded, stack it on a skid, and load the machine as well. The weight of the beams varied from 8 to 40 pounds. He had worked on that particular type of machine for four years.

On March 4, 1981, he reported for work at 4 p.m. Sometime between 6 p.m. and 12 p.m., his foreman told him to work on another machine stacking columns. While stacking the columns, he pulled a muscle in his back. He first noticed the problem with his back about 11 p.m., but he finished his shift and went home without mentioning the incident to anyone. The next morning when he got up, he had pain in his right leg. He went to see his family doctor, Dr. Deterding,

who prescribed pain pills and a hot pad for his back. He also referred claimant to Dr. John Wright. After seeing Dr. Deterding, claimant called his foreman, Michael Lockrin. Lockrin told him to call personnel and let them know that he would not be in to work.

Claimant then saw Dr. Wright, who placed him in St. Joseph's Hospital in Bloomington. On April 3, 1981, he had surgery on his lower back. He did not return to work until November 9, 1981.

Claimant had had some problems with his back in the early 1960s which had required hospitalization but no surgery. He was also treated for back problems in 1966. He had no problems with his back during the 1970s.

On cross-examination, claimant denied that his back hurt when he began work at the new station. He was bending over and reaching for the columns when he hurt his back, but he could not pinpoint what motion caused his injury. He did not report the accident to his foreman or anyone else on March 4, 1981. However, in his telephone conversation with Lockrin the next day, he told him that he had pulled a muscle in his back the previous night at work, and that he had seen a doctor and was told to take off work for a few days. Claimant was not sure whether he told Dr. Deterding that he injured himself at work. He also did not recall telling a doctor at the hospital that he really did not know what he was doing when he developed the pain.

Claimant admitted seeing Dr. Deterding on February 16, 1981, when he was suffering from the flu. He admitted that it was possible that he told the doctor at that time that he had a pain in his chest which radiated into his back.

Claimant also testified that he had a second job, operating his own business as a backhoe operator, in which he did general excavating work. He did very little hand shoveling, but he did do some bending and twisting getting in and out of the cab of the backhoe.

Claimant also admitted that he signed forms requesting group benefits for his injury. In answer to question number five on the forms, "Is claim due to an accident," the box indicating "No" was checked. Claimant explained that his wife had filled out the forms for him.

Rick Smith testified that he had worked with claimant for close to three years prior to March 4, 1981. On that day, around the 10 p.m. break time, he observed claimant all slouched over. Prior to that time, claimant had seemed alright to him.

Charles Airhardt, co-worker of the claimant's, testified that on the night of March 4, 1981, claimant and he stacked columns together after claimant had been transferred from his usual work area. At the

10 p.m. break time, claimant did not go into the break area with the others, but just sat down. At the end of the evening, claimant did not take part in the cleanup but just continued to sit.

Glen Verdon, another co-worker of claimant's, testified that on March 4, 1981, claimant began working with him. Verdon would run the form, and Airhard and the claimant would take the material off and put it on a skid. He noticed nothing unusual about the claimant when he arrived in the area at about 6 p.m. At 10 p.m., he noticed that claimant's movements were slow.

Michael J. Lockrin testified that on March 4, 1981, he was a foreman at Interlake, Inc. On that date, one of the employees he supervised was the claimant. Claimant did not report any kind of accident or injury to him on March 4, 1981. On March 5, 1981, he received a call from the claimant, who told him he would not be in to work that afternoon because his back hurt. Claimant never told him that he had hurt his back the previous evening.

In his evidence deposition, Dr. Wright testified that he is a medical doctor, specializing in orthopedic surgery since 1957, and is board certified. He first saw the claimant in 1966 and did not see him again until March 20, 1981. At that time, claimant was suffering from low back and right leg pain. Dr. Wright then testified as to claimant's hospitalization and the follow-up treatment. He has not seen claimant since January 8, 1982.

According to Dr. Wright, there would be a significant change from working on the machine claimant normally worked on to the one he was working on on the evening of March 4, 1981, and that back injuries occurred more often in work which requires moving in a twisted motion with heavy weights.

On cross-examination, Dr. Wright testified that in 1966 he suggested that claimant might have a disc problem. When he saw claimant on March 20, 1981, he asked him what had caused the onset of his back problems, and claimant told him he first noticed it when he had a cold, about three weeks prior to his visit to the doctor. When Dr. Wright asked how it happened, claimant did not know.

On March 27, 1981, Dr. Wright took another history from the claimant. Dr. Wright again asked what had caused the onset of the pain. Claimant replied that he did not know. He had had some back trouble, and when he caught a cold, it hurt to cough.

The arbitrator found that claimant was temporarily totally disabled for 35$4/7$ weeks under section 8(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(b)) and was permanently disabled to the extent of 20% under section 8(d)(2) of the Act (Ill.

Rev. Stat. 1985, ch. 48, par. 138.8(d)(2)) and was entitled to $168 for necessary medical expenses as a result of an accidental injury arising out of and in the course of his employment.

On review, the Industrial Commission found that the claimant had failed to prove that he had sustained accidental injuries arising out of and in the course of his employment and denied his claim for compensation. The claimant appealed to the circuit court of Livingston County, which confirmed the Industrial Commission. This appeal followed.

On appeal, claimant raises the following issues: whether the decision of the Industrial Commission was against the manifest weight of the evidence; and whether the decision of the Industrial Commission was legally implemented.

■ Both parties to this appeal agree that the applicable standard by which we must judge this case is that as a reviewing court we may not reverse a decision of the Industrial Commission unless it is against the manifest weight of the evidence. *Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475.

■ ■ The Industrial Commission is assigned the task of determining the facts and drawing inferences from competent evidence. (*Sabatini v. Industrial Com.* (1971), 48 Ill. 2d 142.) A court will not overturn the Commission's findings simply because a different inference could be drawn or otherwise substitute its judgment for that of the Commission. (*Niles Police Department v. Industrial Com.* (1981), 83 Ill. 2d 528.) Further, where the evidence is conflicting or of such a nature that different inferences may be drawn therefrom, a reviewing court will not disregard a permissible inference drawn by the Industrial Commission merely because other inferences may be drawn. *Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273.

The claimant relies on *Interlake Steel, Inc. v. Industrial Com.* (1985), 130 Ill. App. 3d 269. In that case, the claimant, Anderson, was installing a butterfly valve when he developed a cramp in his leg. He continued to work without reporting the incident to his foreman. Some 22 days later, he was still in pain, and the pain had extended to his back. He then went to the company nurse and told her he believed he had strained himself while installing the butterfly valves. One of Anderson's co-workers stated that he had complained of pain during the installation of the butterfly valves. However, according to Anderson's foreman, sometime around October 22, 1979, Anderson informed him that his leg was sore, but that he did not know what was wrong with it. The foreman sent him to the first aid department. On October 28, 1979, Anderson requested to see the company doctor and

for the first time indicated that he thought he had been injured while performing a job. Anderson also had a history of back problems. The arbitrator's award of compensation was upheld by the Industrial Commission and was confirmed on review by the circuit court.

On appeal by the employer, the appellate court held that Anderson's testimony that he felt pain in his leg while he was installing butterfly valves established that his injury arose out of his employment. Although the employer argued that Anderson had failed to establish a specific time, place, and cause of his injury because he only "thought" he had injured himself installing the valves, the court determined it to be a matter of credibility, which was the peculiar province of the Industrial Commission to determine. 130 Ill. App. 3d 269, 273.

We find *Interlake Steel, Inc. v. Industrial Com.* to be distinguishable from the case at bar. In the case before us, claimant stated to Dr. Wright that he did not know how he had injured himself, and in fact, attributed his pain to a cough he had contracted. Further, the claimant had a history of back problems. The testimony of claimant's three co-workers affords little support for claimant's position. In fact, Rick Smith's testimony puts the alleged accident happening prior to the time claimant testified that it happened. Further, the insurance forms signed by the client indicated that this was not a work-related injury. Compare *Auler Law Offices v. Industrial Com.* (1984), 99 Ill. 2d 395.

■ After reviewing the record in this case and the various authorities cited to us by the parties, we cannot say that the decision of the Industrial Commission was against the manifest weight of the evidence.

Finally, claimant contends that the reversal of the arbitrator's decision was not legally implemented.

Oral argument in this case was heard on November 8, 1984, by a three-member panel of the Industrial Commission, consisting of Commissioner Adolphus Green, Commissioner Calvin Tansor, and Chairman Mervin Bachman. After oral argument, a predecision memorandum was issued by the Commission on March 20, 1985, indicating a reversal of the arbitrator's decision by a vote of two to one. A request for a full decision was made, and on October 31, 1985, a full decision was issued. The decision was signed by Chairman Bachman. Since Commissioner Green's term had expired, his replacement, Commissioner Alvin Cooke, signed a special concurring opinion, indicating that although he had not taken part in the oral argument, he was signing the decision in order for it to be implemented, pursuant to *Zeigler v. Industrial Com.* (1972), 51 Ill. 2d 137.

Section 19(e) of the Workers' Compensation Act provides in perti-

nent part as follows:

> "A panel of three members, which shall be comprised of not more than one representative citizen of the employing class and not more than one representative citizen of the employee class, shall hear argument; ***. Notwithstanding any other provisions of this Section, the Chairman may not regularly serve on any panel of 3 members of the Commission as described in this Section, but may substitute for any member who is unavailable. A decision of the Commission shall be approved by a majority of Commissioners present at such hearing if any ***." (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(e).

Claimant argues that since the decision was signed only by Chairman Bachman, it is patently invalid on its face because the above statute requires a majority of the three-member panel, and because the Chairman is permitted to sit on a panel only when a member of the panel is unavailable.

■ Our review of the record does not disclose an objection on the part of the claimant to Chairman Bachman's participation as a member of the panel assigned to hear claimant's case. Nor was this issue raised before the circuit court. An issue not raised before the trial court cannot be raised for the first time on review. *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 792.

■ Further, the claimant has failed to show that the third member of the panel was available, which would make Chairman Bachman's participation in the decision improper. Under the circumstances, we find Chairman Bachman's participation in the decision in this case in accordance with the provisions of section 19(e). Ill. Rev. Stat. 1985, ch. 48, par. 138.19(e).

Contrary to claimant's position, we find the decision signed by Chairman Bachman and joined in by Commissioner Cooke to be the approved procedure in cases where a commissioner who has participated in the oral argument and in the decision of a case is replaced prior to rendering of a full decision. See *Zeigler v. Industrial Com.* (1972), 51 Ill. 2d 137.

The judgment of the circuit court of Livingston County is affirmed.

Affirmed.

BARRY, P.J., and McCULLOUGH, McNAMARA, and KASSERMAN, JJ., concur.