RICHARD A. PAYETTA, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Graber Concrete Pipe Company, Appellee).

Second District (Industrial Commission Division)   No. 2—02—0586WC

Opinion filed June 17, 2003.

Paul W. Grauer, of Paul W. Grauer & Associates, of Schaumburg, for appellant.

Capper C. Grant, of Pollina, Grant & Gentry, of Downers Grove, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Richard Payetta, filed a claim against respondent, Graber Concrete Pipe Co., under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1994)). The Illinois Industrial Commission (Commission) awarded the wage differential benefits pursuant to section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 1994)) commencing when petitioner found other suitable employment. The circuit court of Du Page County entered judgment on the Commission's decision. On appeal, petitioner raises issues as to (1) whether the wage differential benefits under section 8(d)(1) should commence from the date of his arm amputation, as opposed to the date petitioner found other suitable employment, and (2) whether respondent is entitled to a credit of $50,437.02 against the section 8(d)(1) award. We affirm.

## FACTS

On April 23, 1996, petitioner lost his right arm in an accident while working for respondent. Petitioner filed a claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)). The parties entered into stipulations for arbitration regarding payments that had been made to petitioner. The parties stipulated that petitioner had received the sum of $400 for one week and $491.59 for a period of 147 weeks following the accident, for a total of $72,663.73. The parties also stipulated that petitioner received $442.43 for a period of 114 weeks, for a total of $50,436.11. Overall, the parties stipulated that a total of $123,099.84 had been paid to petitioner.

At arbitration, petitioner sought wage differential benefits pursuant to section 8(d)(1) (820 ILCS 305/8(d)(1) (West 1994)). Respondent stipulated that petitioner would have been working in his former employment for 57 hours per week at the rate of $16.43 per hour, yielding a weekly wage of $936.51. At arbitration, the parties contested the earning capacity of petitioner and what credit, if any, should be due respondent.

The Commission entered a decision finding that petitioner had been temporarily totally disabled for a total of 129 weeks from April 24, 1996, through October 14, 1998. The Commission found that respondent was entitled to credit of $11,655.76 for overpayment of temporary total disability (TTD) benefits after October 14, 1998.

The Commission found that respondent had promptly paid to petitioner statutory amputation loss benefits of $442.43 per week for a period of 114 weeks after the accident for a total of $50,436.11. The Commission found that respondent was entitled to credit for these payments as they represented statutory amputation loss benefits. The Commission also stated that respondent should have a credit "on all amounts paid, if any, to or on behalf of petitioner on account of said accidental injury."

Pursuant to section 8(d)(1) of the Act, the Commission ordered that, commencing on October 14, 1998, respondent was obligated to pay the sum of $239.73 per week for the duration of petitioner's disability. Petitioner estimates that, taking into account the $62,092.78 in credit given to respondent, he will not receive any payments until October 2003, when the credits are amortized to zero at the rate of $239.73 per week. The circuit court adopted the Commission's findings. Petitioner appeals.

## ANALYSIS

■ The Commission awarded petitioner wage differential benefits pursuant to section 8(d)(1) of the Act. Section 8(d)(1) reads:

"(d) 1. If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under the specific schedule set forth in paragraph (e) of this [s]ection, receive compensation for the duration of his disability, subject to the limitations as to maximum amounts fixed in paragraph (b) of this [s]ection, equal to 66²/₃% of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." 820 ILCS 305/8(d)(1) (West 1994).

■ Alternatively, petitioner could have sought a scheduled award under section 8(e) for permanent partial loss of an arm. Section 8(e)(10) provides that an injured party should receive 235 weeks of pay for an accident that results in amputation of an arm below the elbow. 820 ILCS 305/8(e)(10) (West 1994). In the event of a loss of a member, a petitioner has the choice of seeking relief under either section 8(d)(1) or section 8(e)(10), but not both. *General Electric Co. v. Industrial Comm'n,* 89 Ill. 2d 432, 436, 433 N.E.2d 671, 673 (1982). A petitioner is allowed to choose between the scheduled loss and a wage differential on the grounds that the injured party will choose the award most likely to approximate the earnings loss that the Act attempts to compensate. *General Electric Co.,* 89 Ill. 2d at 438, 433 N.E.2d at 674. As petitioner chose to seek an award for wage differential, he may not claim the scheduled award for loss of his arm.

Petitioner contends that the wage differential payments should start to accrue at the time of the accident when he lost his arm. Petitioner points to the language of section 8(d)(1) that provides that an injured party should receive compensation for the "duration of his disability." 820 ILCS 305/8(d)(1) (West 1994).

■ A review of section 8(d)(1), however, reveals that the commencement of wage differential payments is determined by when the petitioner becomes "partially incapacitated." Section 8(d)(1) begins, "If, after the accidental injury has been sustained, the employee as a result becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under the specific schedule set forth in paragraph (e) of this [s]ection, receive compensation for the duration of his disability ***." 820 ILCS 305/8(d)(1) (West 1994). The date when it could first be said that petitioner was "partially incapacitated" is the first date of his new employment (October 14, 1998).

The fact that petitioner could not be classified as having been partially incapacitated prior to the date of his new employment is underlined by the fact that, prior to that date, he was entitled to benefits for being temporarily totally incapacitated. Both parties entered into arbitration on the stipulation and agreement that petitioner was entitled to benefits for temporary and total incapacitation up until that date. In fact, the parties stipulated that respondent had overpaid petitioner the amount of $11,655.76 in TTD benefits.

Section 8(d)(1) does not allow a party to receive an amount greater than that he would receive for temporary total disability in a given time frame. Section 8(b) of the Act sets forth the rates for benefits for temporary total incapacitation. Section 8(d)(1) limits recovery to the maximum of this temporary total disability as it reads that "compensa-

tion for the duration of \*\*\* disability, subject to the limitations as to maximum amounts fixed in paragraph (b) of this [s]ection." 820 ILCS 305/8(d)(1) (West 1994). As with other provisions in the Act that provide compensation for a loss in wages, the claim for wage differential cannot be made for a time period when the petitioner has already received compensation for temporary total disability.

The limitation of wage differential awards to the maximum amount of TTD is in contrast to compensation under the Act for partial disability or for the scheduled award for loss of a member. An employee may receive compensation under section 8(d)(2) "in addition to compensation for temporary total disability under paragraph (b)." 820 ILCS 305/8(d)(2) (West 1994). Furthermore, petitioner had the election of choosing the scheduled award under section 8(e), which provides:

> "[T]he employee shall receive compensation for the period of temporary total incapacity for work resulting from such accidental injury, under subparagraph 1 of paragraph (b) of this [s]ection, and shall receive in addition thereto compensation for a further period for the specific loss herein mentioned \*\*\*." 820 ILCS 305/8(e) (West 1994).

The contrast with section 8(d)(1), which limits recovery to the maximum amount fixed in paragraph (b), indicates that recovery for wage differential does not extend into a period where an injured party has received the maximum amount of TTD payments.

In effect, petitioner's stance would allow an injured employee to receive an amount for wage differential over that already being given for temporary total incapacity. This is against the language of section 8(d)(1) and counterproductive to the stated purpose of the Act to approximate loss in earnings. *General Electric Co.*, 89 Ill. 2d at 438, 433 N.E.2d at 674.

Petitioner contends that the trial court erred by awarding respondent a credit of $50,437.02. Petitioner contends that respondent failed to prove the nature of the payments and, therefore, is not entitled to any credit. Petitioner argues that it is common for a worker to receive payments for which a respondent would receive no credit and cites as an example group medical payments where an employer does not contribute to the plan. See *Village of Streamwood Police Department v. Industrial Comm'n*, 57 Ill. 2d 345, 312 N.E.2d 239 (1974). This case, however, does not involve group medical payments or payment from any plan to which respondent did not contribute. Traditionally, the determination of whether to allow credit is within the discretion of the court entering the workers' compensation award. *Gallianetti v. Industrial Comm'n*, 315 Ill. App. 3d 721, 733, 734 N.E.2d 482, 492 (2000); see 100 C.J.S. *Workers' Compensation* § 608 (2000).

■ The payments made by respondent were made promptly in accordance with the demands for statutory loss of a member under section 8(e). 820 ILCS 305/8(e) (West 1994). The framework of the Act calls for prompt payment for loss of a member and crediting the complying employer if the employee later decides to seek compensation under section 8(d)(1). *Modern Drop Forge Corp. v. Industrial Comm'n*, 284 Ill. App. 3d 259, 266, 671 N.E.2d 753, 758 (1996). Indeed, the rationale for penalizing an employer who does not promptly pay a scheduled award is based on the fact that the employer would be entitled to a credit if the employee later seeks an award for wage differential. *Modern Drop Forge Corp.*, 284 Ill. App. 3d at 266, 671 N.E.2d at 758.

Given the lack of any indication that the payments were anything but compensation for loss of a limb, the timing and amount of the payments are sufficient to support the Commission's finding. Adopting petitioner's position would discourage prompt payment and encourage administrative delay by requiring resolution of every ambiguity before paying. Credit for overpayment should be given to a respondent in order to facilitate these policy goals. See *Gallianetti*, 315 Ill. App. 3d at 733, 734 N.E.2d at 492.

Accordingly, the order of the circuit court of Du Page County is hereby affirmed.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, O'MALLEY, and HOLDRIDGE, JJ., concur.