CONSOLIDATED FREIGHTWAYS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Richard Yeruski, Appellee).

Third District (Industrial Commission Division)   No. 3—90—0772WC

Opinion filed November 3, 1992.

Michael E. Rusin, of Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellant.

Kenneth R. Given, of Krol, Bongiorno & Given, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant suffered a compensable back injury and was awarded permanent partial disability by the Industrial Commission (Commission) to the extent of 20% under the "man as the whole" provision of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)(2)). In addition, the Commission refused to grant respondent Consolidated Freightways a credit against the award for a 15% "man as the whole" settlement claimant received for a prior back injury he suffered to the same disc location. On appeal, respondent contends the Commission's failure to take into account or grant it a credit for the prior injury, as well as the Commission's determination of the extent of claimant's permanent disability, is in error. Taken with the case is a motion by claimant to dismiss the appeal and to quash summons in the circuit court for lack of subject-matter jurisdiction.

The evidence reveals that claimant, a dock hand, was employed by respondent on March 17, 1987, when he injured his lower back moving a heavy box. These injuries resulted in a laminectomy performed by Dr. Elwood, who released claimant to return to work at the end of August 1987.

Claimant acknowledged that in 1984 he suffered an employment-related back injury to the same region of his spine and was treated by chymopapain injection. After seven months of recuperation, claimant returned to work and continued as a dock hand for the next three years without further back problems or medical treatment prior to his current injury.

Following his most recent surgery, claimant testified he has been advised not to engage in running or swimming and still has problems with his lower back, although he worked for respondent as a dock hand for approximately one year prior to arbitration. Claimant stated that weather, including extreme heat or cold, causes his back to hurt and he is exposed to such changes in the elements because he works out of doors. Although exercise was suggested, claimant stated he could not perform the routines because of pain. In addition, claimant has problems sleeping for more than an hour or two and uses a special bed.

Medical reports of various treating and examining physicians were admitted. With respect to claimant's 1984 injury, this evidence tended to show that prior to the spinal injection, claimant demonstrated symptoms of a bulging disc and had straight-leg positive reactions, principally on the left side, at 75 degrees. Little or no defect was shown on claimant's right side. Subsequent to the injection, a post-operative release report suggested claimant was 75% improved and his forward flexion at that time was 60 degrees with tightness appearing in the straight-leg raise at the 80-degree level on the left side only.

Claimant entered a workers' compensation settlement agreement with respondent for his 1984 injury for which he received, in part, 15% permanent disability for loss under the "man as a whole" provision of section 8(d)(2) of the Act.

Concerning claimant's 1987 injury, Dr. Elwood's medical reports were admitted into evidence. Following surgery, Elwood found claimant was able to flex forward to the 80-degree mark and had slight restrictive lumbar flexion at the 70-degree level. Claimant also complained of some leg discomfort but, in Elwood's opinion, had recovered excellently from the laminectomy and was able to return to work.

Approximately one month prior to arbitration, claimant was examined independently by Dr. Dupre and Dr. Ludwig who were, respectively, respondent's and claimant's examining physicians.

Dr. Dupre found claimant had forward flexion to a full 90 degrees without complaint of pain. Claimant also performed the straight-leg raise, again to 90 degrees, without complaint. In a supine position, claimant was able to complete the straight-leg raise on the left side to 80 degrees without difficulty. Based on his tests, Dupre found no sciatic condition and no objective signs of any impairment.

In contrast, Dr. Ludwig examined claimant and reviewed X rays. According to Ludwig, the X rays revealed bone spurs and a general flattening of the disc space at the L5-S1 level, both of which were consistent with the prior laminectomy. Ludwig found claimant had difficulty in performing heel-to-toe movements and was able to flex forward only to 45 degrees without discomfort. Claimant also exhibited backward flexion of only 5 degrees (with normal being 35 degrees) and lateral flexion on both sides of only 15 degrees (with normal being 40 degrees). Finally, Ludwig noted a significant discrepancy in straight-leg-raise test results with claimant exhibiting pain at 35 degrees on the right side and 25 degrees on the left side. Ludwig concluded claimant suffered from marked sciatic nerve damage.

In reviewing the evidence, the arbitrator acknowledged that although the initial chemonucleolysis had successfully resolved claimant's back condition following his 1984 accident, the myelogram performed subsequent to the second injury revealed a herniated disc at the L5-S1 level with amputation of both the left S-1 and right S-2 nerve roots. These conditions were substantiated during the course of surgery. In light of the significant surgical findings, the arbitrator found that Dr. Dupre's conclusion that there was no objective evidence of current disability was not credible and awarded claimant 20% "man as the whole" permanent disability, based on Dr. Ludwig's opinions. The arbitrator expressly denied respondent a credit toward its current liability for the prior 1984 settlement award. The Commission affirmed the arbitrator and the circuit court confirmed the Commission on further review by respondent.

Initially, we address claimant's motion to dismiss for lack of subject-matter jurisdiction because respondent's attorney executed the statutory bond filed in the circuit court. (See *Illinois Armored Car Corp. v. Industrial Comm'n* (1990), 205 Ill. App. 3d 993, 563 N.E.2d 951.) Although the supreme court agreed with our ruling in

*Deichmueller Construction Co. v. Industrial Comm'n* (1992), 151 Ill. 2d 413, it nevertheless made the decision prospective only. Therefore, the motion to dismiss is denied.

Respondent next argues that the Commission erred in refusing to consider or credit it with the 15% "man as a whole" settlement award made to claimant for his previous back injury. Relying upon *Killian v. Industrial Comm'n* (1986), 148 Ill. App. 3d 975, 500 N.E.2d 450, the Commission denied respondent's request.

In *Killian*, this court denied an employer credit under section 8(e)(17) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(e)(17)) for previous payments made to claimant for a prior back injury. Claimant had been hospitalized on three separate occasions for work-related injuries to his lower back. A settlement for the first injury included 7½% loss of the use of each leg. An arbitrator subsequently found claimant had sustained 20% partial disability under the "man as a whole" provisions of section 8(d)(2) for the second and third back injuries. The employer sought a reduction in the subsequent section 8(d)(2) award for the second and third injuries in the amount paid for the scheduled injury to claimant for the first accident. This court held that under section 8(e)(17) of the Act an employer can receive a credit for previously paid benefits only when an employee has reinjured a body part or member listed in section 8(e). Because the "back" is not listed as a "member" under section 8(e), the employer's request for credit was properly denied.

Respondent seeks to distinguish our holding in *Killian* on its facts. There, respondent points out, benefits were originally awarded for a leg, a scheduled "member" under section 8(e), whereas the second award was for "man as a whole" injuries. In this case, respondent argues that because the injury in both accidents was to precisely the same body part, a credit, or at least consideration, should be given by the Commission for the prior award in determining benefits for the current injury. Respondent relies upon the rationale articulated in *General Motors Corp. v. Industrial Comm'n* (1975), 62 Ill. 2d 106, 338 N.E.2d 561, in which it was stated that a permanent total or partial loss of use for which compensation has been paid shall be credited in any award for a subsequent injury to the same member. We are not persuaded.

■ Our holding in *Killian* was predicated upon the fact that a "back" is not a listed body part or member under section 8(e) of the Act. It is, therefore, immaterial whether the same area of claimant's back was injured in both accidents. Moreover, in *Killian* this court expressly stated it was adhering to the admonishment in

*Freeman United Coal Mining Co. v. Industrial Comm'n* (1984), 99 Ill. 2d 487, 459 N.E.2d 1368, that the statutory provisions for credit should be interpreted narrowly and should not be extended by implication. We concluded:

> " ' "Whether or not the legislature is correct in awarding more compensation for one type of injury rather than another is not for the court to say. As was said in *Sampson v. Industrial Com.*, 33 Ill. 2d 301, the legislature 'has wide discretion in the exercise of the police power and absolute uniformity of treatment for injuries is impossible.' " ' *Weast Construction Co. v. Industrial Com.* (1984), 102 Ill. 2d 337, 341, quoting *Koesterer v. Industrial Com.* (1970), 45 Ill. 2d 383, 385-86." (*Killian*, 148 Ill. App. 3d at 979, 500 N.E.2d at 453.)

Thus, the distinction that respondent attempts to draw between the facts of this case and *Killian* is without substance. Since a "back" is not an enumerated "member" under section 8(e), no credit is due respondent because of a prior injury, irrespective of whether the current injury is to the exact same area of the back.

Respondent also contends that our decision produces an absurd result because the failure to consider prior injuries, whatever their nature, and to grant credit for benefits paid might amount to awarding cumulative percentages which exceed 100% of the statutory maximum of 500 weeks permitted for "man as the whole" benefits. This argument is without merit.

■ Under section 8(d)(2) of the Act, an employee may receive compensation for that percentage of 500 weeks that the partial disability resulting from the injuries bears to the total disability. (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)(2).) Claimant argues that if no credit is available to an employer, an employee who suffers successive back injuries may be awarded compensation in excess of the total permitted by statute.

We perceive several difficulties with respondent's theory. In the first instance, since the cumulative award for both injuries in this case does not exceed 100% of 500 weeks, respondent's argument is, at best, hypothetical. Moreover, this exact argument was rejected by this court in *Killian* when, assuming *arguendo* the result was absurd, we concluded that the legislature could distinguish between the compensation awarded for different types of injuries and it was not for this court to determine whether the legislature was correct in doing so.

Finally, we are not persuaded that the hypothetical situation respondent describes would necessarily produce an absurd result. We note that Professor Larson has observed:

"The capacities of a human being cannot be arbitrarily and finally divided and written off by percentages. The fact that a man has once received compensation as for 50 percent of total disability does not mean that ever after he is in the eyes of compensation law but half a man, so that he can never again receive a compensation award going beyond the other 50 percent of total. After having received his prior payments, he may, in future years, be able to resume gainful employment. In the words of the Colorado court, he may have resumed employment as a 'working unit.' If so, there is no reason why a disability which would bring anyone else total permanent disability benefits should yield him only half as much. A similar principle may be applied to an individual member that has been restored in whole or in part." (2 A. Larson, Workmen's Compensation Law §59—42(g)(3), at 10-594 through 10-599 (1992).)

Contrary to the view held by respondent, *i.e.*, that it would be absurd to permit successive injuries to cumulatively exceed more than 500 weeks of benefits, is the argument that it might be unreasonable not to allow such accumulation. On this record and based on the precedent of *Killian*, the Commission did not err in determining respondent was not entitled to the benefit of or credit for the prior settlement award.

Respondent's final argument is that the Commission's determination that claimant suffers from a current 20% disability is against the manifest weight of the evidence. In respondent's view, claimant's current physical condition has improved over that which existed after his first accident and, therefore, it is contended he has not demonstrated an increase in disability.

In support, respondent relies upon selectively chosen bits of medical evidence, initially pointing to a discharge report from the surgeon who treated claimant's 1984 injury and found, at the time of claimant's release, that he had forward flexion to about 60 degrees with a straight-leg raise positive on the left side at 80 degrees and negative on the right side. Jumping forward, respondent points to Dr. Elwood's final report prepared upon claimant's release to return to work after his laminectomy, at which time Elwood found forward flexion to be 80 degrees with lumbar flexion to 70 degrees. Finally, respondent concludes by citing the report of its ex-

amining physician, Dr. Dupre, who concluded plaintiff suffered from no objective signs of impairment based on normal forward flexion and straight-leg-raise test results.

In opposition, claimant points to the fact that whatever the extent of his injury in 1984, it apparently resolved itself following treatment as claimant was able to return to work without further disability or medical treatment for three years prior to his second injury. Claimant does not dispute the findings of Dr. Elwood following the laminectomy, but offers the report of his examining physician, Dr. Ludwig, who found substantial discrepancies in claimant's physical abilities one year after Elwood released him to return to work. In addition to these abnormal examination findings by Ludwig were his impressions of the X rays which revealed bone spurs and compression of the affected disc area consistent with the results of the laminectomy which repaired the herniated disc and amputated nerve roots. It is also undisputed that claimant's current injury affects both his left and right side while his original injury was confined principally to the left side. Finally, claimant testified to continuing pain, including an inability to exercise, run or swim, and a problem sleeping for which he uses a special bed.

It is the province of the Commission to determine the nature and extent of an employee's disability, particularly where conflicting medical evidence is presented. (*Peavey Co. Flour Mills v. Industrial Comm'n* (1976), 64 Ill. 2d 252, 356 N.E.2d 36; *Wallace v. Industrial Comm'n* (1983), 98 Ill. 2d 33, 455 N.E.2d 92.) The Commission's determination on this issue will be disturbed only if it is against the manifest weight of the evidence. *Bishop v. Industrial Comm'n* (1980), 78 Ill. 2d 315, 399 N.E.2d 1326.

■ Dr. Ludwig's findings are neither inherently inconsistent nor so grossly at variance with the other medical evidence presented to the Commission that his findings must be rejected. Claimant's 1984 back condition had, by all accounts, resolved itself and was not a factor three years later when he suffered his current injury. Moreover, the fact that Dr. Elwood found claimant to be in a substantially improved condition following surgery for the second accident does not necessarily entail that claimant enjoyed that same condition one year later when he was examined by Dr. Ludwig. In fact, Dr. Elwood's description of claimant's improved condition was tempered by his additional finding that claimant continued to experience discomfort in his legs and had not returned to full range of motion even upon his release to return to work. This evidence is

consistent with claimant's direct testimony that his back problems continued following his laminectomy despite his ability to work.

The extent of claimant's disability was, therefore, a question of fact for the Commission to determine and its decision to accept the findings and opinions of Dr. Ludwig to the exclusion of those of Dr. Dupre is not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the La Salle County circuit court is affirmed.

Affirmed.

RAKOWSKI, WOODWARD, STOUDER and LEWIS, JJ., concur.