ROBERT BAUMGARDNER, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (The County of Cook, Appellee).

First District (Workers' Compensation Commission Division)
No. 1—10—0727WC

Opinion filed April 11, 2011.

Russo & Russo, Ltd., of Wheaton (Anthony L. Russo, Sr., of counsel), for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Patrick Driscoll, Jr., and Richard G. Crusor, Jr., Assistant State's Attorneys, of counsel), for appellee.

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Presiding Justice McCullough and Justices Hudson and Holdridge concurred in the judgment and the opinion.

Justice Stewart specially concurred, with opinion.

## OPINION

The claimant, Robert Baumgardner, appeals from a judgment of the circuit court of Cook County which confirmed a decision of the Illinois Workers' Compensation Commission (Commission) that declined to award him a scheduled permanent partial disability award under section 8(e)(12) of the Workers' Compensation Act (Act) (820 ILCS 305/8(e)(12) (West 2002)) for injuries he sustained on April 8, 1996, in addition to a wage-differential award under section 8(d)(1) (820 ILCS 305/8(d)(1) (West 2002)). For the reasons that follow, we affirm the judgment of the circuit court.

The claimant filed three applications for adjustment of claim pursuant to the Act (820 ILCS 305/1 *et seq.* (West 2002)), seeking benefits for injuries he allegedly received while in the employ of the respondent, the County of Cook (County), on April 8, 1996 (case No. 96 WC 24022), May 4, 1998, (case No. 98 WC 65658), and August 7, 1998 (case No. 98 WC 65659). A consolidated arbitration hearing was conducted on all three applications. The following factual recitation is taken from the evidence presented at the consolidated arbitration hearing.

The claimant began working for the County in 1994 as a laborer I, performing heavy-duty tasks. On April 8, 1996, he was pulling branches from a ditch when he slipped on an incline and felt his right knee "pop," which caused immediate pain. The claimant notified his supervisor and was taken directly to the Palos Primary Care Center.

Following an examination and X-rays, an immobilizer was placed on his right leg, and he was referred to his primary care physician for additional treatment. The following day, the claimant saw his primary care doctor, who ordered an MRI and referred him to Dr. Clay Canaday, an orthopedic surgeon. The MRI indicated that the claimant had sustained a torn lateral meniscus in his right knee, which was surgically repaired by Dr. Canaday on May 7, 1996. After the surgery, the claimant underwent physical therapy from May 14, 1996, to August 1, 1996. He was off work from April 9, 1996, to October 16, 1996, when Dr. Canaday released him to work without any restrictions.

On December 31, 1996, the claimant again injured his right knee when he hyperextended it while walking at home. As a result of this incident, the claimant was off work from December 31, 1996, to April 2, 1997. Though he released the claimant to return to work, Dr. Canaday prescribed a knee brace to be worn at all times. On April 22, 1997, the claimant was injured at work when his knee "popped" and buckled while he was cleaning trash from a ditch. The claimant was taken to the hospital and subsequently treated with Dr. Canaday, who ordered him to remain off work until May 12, 1997.

Dr. Canaday examined the claimant on July 1, 1997, and determined that the injuries sustained on December 31, 1996, and April 22, 1997, exacerbated the condition in his right knee originally caused by the initial employment accident on April 8, 1996. Dr. Canaday also concluded that the claimant's right-knee condition was permanent and that he would require a continuous exercise program to maintain his muscle strength. Following this examination, Dr. Canaday released the claimant to return to full duty, but with the restriction that he not work on inclines or in ditches or trenches. In a report dated July 15, 1997, Dr. Canaday stated that the claimant's prognosis was for "steadily worsening osteoarthritis," which may require surgery in the future.

The County did not accommodate the employment restriction ordered by Dr. Canaday, and the claimant resumed his previous duties as a laborer I. On May 4, 1998, the claimant slipped on an incline and twisted his right knee while cutting down a bush. He again treated with Dr. Canaday and was off work from May 5, 1998, through June 23, 1998. The claimant then fell and injured his right foot on August 7, 1998, and was off work until September 21, 1998.

On December 20, 1998, the claimant was reassigned to light-duty work as an engineer technician I as a result of the work restriction ordered by Dr. Canaday. This job reclassification reduced the claimant's hourly earnings, and the County paid him a wage differential under section 8(d)(1) of the Act, commencing on December 20, 1998.

After the May 4, 1998, injury, the claimant continued to experience pain and swelling in his right knee, and he underwent a total right-knee replacement on July 29, 2002. Following the surgery, Dr. Canaday prescribed a home exercise program and pain medication. As of the date of the arbitration hearing, the claimant continued to perform light-duty work as an engineer technician I, and the County continued to pay him a wage differential pursuant to section 8(d)(1). The claimant testified that he is able to ambulate, but still takes pain medication and uses a cane if he must be on his feet and moving about for long periods of time.

The parties stipulated that the claimant sustained work-related accidents on April 8, 1996, and on May 4, 1998, and that the condition of ill-being in his right leg is causally connected to the injuries sustained on those two dates. Following the hearing, the arbitrator requested that counsel for both parties each submit a proposed decision covering the three consolidated claims. In its proposed order the County indicated that, as a result of his injury on April 8, 1996, the claimant should have received a scheduled permanent partial disability (PPD) award under section 8(e)(12) of the Act for a period of 70 weeks, because he had sustained a 35% loss of use of his right leg. The proposed decision submitted by the claimant did not include a similar provision. Counsel for the claimant subsequently filed a motion seeking to adopt this aspect of the County's proposed PPD award. Though the claimant's motion was filed prior to the issuance of the arbitrator's decision, it was not heard until after the decision had been entered.

The arbitrator issued a single decision covering all three of the consolidated claims. The arbitrator found that the claimant sustained accidental injuries on April 8, 1996, May 4, 1998, and August 7, 1998. In addition, he found that the claimant was undergoing active medical treatment when he sustained his second and third accidental injuries and that his condition had not stabilized and reached maximum medical improvement (MMI) until December 20, 1998. The arbitrator awarded the claimant temporary total disability (TTD) benefits for 53 weeks based on the April 8, 1996, injury and for 53 additional weeks based on the May 4, 1998, injury. In addition, pursuant to section 8(d)(1) of the Act, the arbitrator determined that the claimant was entitled to receive a wage differential for the duration of his disability. The arbitrator denied the claimant's posthearing request to adopt the County's proposed order for section 8(e)(12) benefits.

Both the claimant and the County sought review of the arbitrator's decision before the Illinois Workers' Compensation Commission (Commission). In a unanimous decision, the Commission affirmed that por-

tion of the arbitrator's decision awarding the claimant 53 weeks of TTD benefits for the April 1996 injury. However, the Commission modified the arbitrator's decision to correct a clerical error with respect to the May 1998 accident and awarded the claimant $13^2/7$ weeks of TTD benefits for that injury.

The Commission also affirmed the grant of wage-differential benefits under section 8(d)(1) for the duration of the claimant's disability and rejected the claimant's argument that he was also entitled to a scheduled permanent partial disability (PPD) award under section 8(e)(12) for the April 1996 injury alone. In reaching this conclusion, the Commission found that the question of the nature and extent of the claimant's permanent disability in his right knee is to be determined based on his condition at the time of the arbitration hearing and not based on the condition that existed 10 years earlier. The Commission concluded that the claimant was not entitled to a separate permanency award for the April 1996 injury because he had sustained a subsequent, aggravating and intervening injury to the same body part, which occurred prior to the arbitration hearing. The Commission further concluded that the arbitrator properly found that the claimant's current condition of ill-being in his right knee was solely causally related to the second work-related injury in May 1998 and that the section 8(d)(1) wage-differential award was appropriate. Lastly, the Commission found that the claimant failed to present sufficient evidence with regard to his condition of ill-being as a result of the August 1998 accident and, consequently, refused to award PPD benefits for that injury.

The claimant filed a petition for judicial review of the Commission's decision in the circuit court of Cook County. The circuit court confirmed the Commission's decision, and this appeal followed.

On appeal, the claimant argues that the Commission erred in finding that he was not entitled to a scheduled PPD award under section 8(e)(12) of the Act for the injury he sustained on April 8, 1996. In support of this argument, he contends that the Act does not preclude a scheduled PPD award where wage-differential benefits have been granted under section 8(d)(1) based on a second, aggravating injury to the same body part prior to the arbitration hearing on both claims.

Initially, we note that the claimant asserts that, because the facts presented are undisputed, the Commission's finding with regard to permanency presents a question of law subject to *de novo* review. We disagree.

Generally, a determination of the nature and extent of a claimant's permanent disability is a question of fact to be resolved by the Commission, and its finding in this regard should be given substantial

deference and will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Jewel Food Cos. v. Industrial Comm'n*, 256 Ill. App. 3d 525, 534, 630 N.E.2d 865 (1993). Even in cases where the facts are undisputed, this court must apply the manifest-weight standard if more than one reasonable inference might be drawn from the facts. *Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 549, 578 N.E.2d 921 (1991). It is only in those cases where the undisputed facts are susceptible to but a single inference that the inquiry becomes one of law and subject to *de novo* review. *Illinois Consolidated Telephone Co. v. Industrial Comm'n*, 314 Ill. App. 3d 347, 349, 732 N.E.2d 49 (2000).

Though the facts in this case are undisputed, we do not believe that only a single inference may be drawn regarding the nature and extent of the disability resulting from the claimant's April 8, 1996, accident. Accordingly, we review the Commission's decision as to the appropriate permanent disability award for that injury to determine whether it is against the manifest weight of the evidence. *Brady*, 143 Ill. 2d at 549. For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Durand v. Industrial Comm'n*, 224 Ill. 2d 53, 64, 862 N.E.2d 918 (2006); *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

In challenging the denial of a separate PPD award under section 8(e)(12) for the April 1996 injury, the claimant argues that the Commission erred in finding that his condition of ill-being resulting from that accident had to be evaluated as of the time of the arbitration hearing. This argument is unpersuasive.

The Act clearly contemplates a single determination as to the permanency of a claimant's condition as a result of an employment accident. Section 8(d)(1) of the Act provides that the Commission may award a claimant wage-differential benefits "except in cases compensated under the specific schedule set forth in paragraph (e) of this Section." 820 ILCS 305/8(d)(1) (West 2006). In addition, section 8(e) states, in relevant part, that a claimant may be granted a scheduled award, "but shall not receive any compensation under any other provisions of this Act." 820 ILCS 305/8(e) (West 2006). In considering the application of these two provisions, the supreme court has held that compensation may be proper under either of these sections but not both at once. *General Electric Co. v. Industrial Comm'n*, 89 Ill. 2d 432, 437, 433 N.E.2d 671 (1982). From a procedural and practical standpoint, where a claimant has sustained two separate and distinct injuries to the same body part and the claims are consolidated for hearing and decision, it is proper for the Commission to consider all of

the evidence presented to determine the nature and extent of his permanent disability as of the date of the hearing. The propriety of this approach is demonstrated by the instant case, where the consolidated hearing was continued over several years and the Commission's decision was issued more than 11 years after Dr. Canaday last treated the claimant for the April 1996 injury to his right knee and more than 10 years after the May 1998 injury to the same body part.

In support of his contention that the Commission should have entered an award under section 8(e)(12) for the April 1996 injury, the claimant asserts that he would have been entitled to a separate PPD award if the hearing on that claim had occurred prior to the 1998 injury. While this may be true (see *General Electric Co.*, 89 Ill. 2d at 434-38), that fact does not require the grant of a scheduled PPD award in this case. Here, the two fundamental issues before the Commission were (1) the nature and extent of the permanent disability in the claimant's right knee, and (2) the appropriate type and amount of compensation to be awarded based on that disability. Because the claimant suffered multiple injuries to the same body part as a result of successive accidents and those claims were tried together, the Commission properly evaluated the totality of the evidence as it related to the claimant's overall condition of ill-being at the time of the hearing and entered a single award that encompassed the full extent of the disability resulting from both the April 1996 and the May 1998 injuries. The claimant's reliance on tort cases to support his argument that these two injuries were divisible and warranted separate permanency awards is misplaced where the right to recover under the Act is purely statutory and not governed by common law. See *Interstate Scaffolding, Inc. v. Illinois Workers' Compensation Comm'n*, 236 Ill. 2d 132, 145, 923 N.E.2d 266 (2010).

We also reject the claimant's argument that the Commission's decision must be reversed as against the manifest weight of the evidence because it adopted the arbitrator's finding that the condition in his right knee resulting from the April 1996 accident had not stabilized until December 20, 1998. The substance of the Commission's decision was not premised on this factual determination. Thus, to the extent that the arbitrator may have incorrectly identified the date on which the claimant reached MMI after his initial work-related accident, the error is of no consequence here.

Based on the record presented, we cannot say that the Commission's denial of a scheduled PPD award under section 8(e) for the April 1996 injury is against the manifest weight of the evidence. Ac-

cordingly, we affirm the judgment of the circuit court which confirmed the Commission's decision.

Affirmed.

JUSTICE STEWART, specially concurring:

I concur in the majority decision in this case. Respectfully, I write separately, however, to explain my reasons for concurring and to reconcile my concurrence in this case with my partial dissent in *City of Chicago v. Illinois Workers' Compensation Comm'n*, 409 Ill. App. 3d 258 (2011).

In *City of Chicago*, the majority, applying a *de novo* standard of review, held that the claimant, who asserted separate claims for two back injuries at a consolidated hearing, could only obtain one recovery for permanent partial disability (PPD) under section 8(d) of the Act. 820 ILCS 305/8(d) (West 2008). In doing so, the majority found that the claimant in that case had only proved one condition of ill-being resulting from both injuries. The Commission had found otherwise and ordered separate PPD awards for each injury. The point of my dissent was that whether a claimant has proved that he sustained separate conditions of ill-being from two injuries is a factual determination to be made by the Commission which should not be overturned unless it is against the manifest weight of the evidence. As detailed in my dissent, the decision of the Commission to give the claimant separate PPD awards in *City of Chicago* was not against the manifest weight of the evidence. In other words, although the legal principle espoused by the majority may have had application to a case with different facts, the record in *City of Chicago* did not support the result.

In this case, the Commission specifically addressed the issue of whether the claimant proved a separate condition of ill-being resulting from separate injuries to the same body part. Here, the Commission specifically found that the claimant's condition of ill-being was solely causally related to the second accident and declined to give the claimant a separate PPD award for the first injury. Appropriately, in this case, the majority has analyzed the Commission's decision using the manifest-weight-of-the-evidence standard and has concluded that there is sufficient evidence to support the Commission's decision. Based upon the record in this case, I agree with that conclusion.

In my view, the issue of whether a claimant asserting separate claims for injuries to the same body part in a consolidated hearing is entitled to separate PPD awards is a factual determination to be made by the Commission. If the Commission determines that separate ac-

cidents have caused one indivisible injury justifying a single PPD award, and that factual determination is not against the manifest weight of the evidence, the decision should be affirmed. On the other hand, if the Commission determines that a claimant has proved separate compensable injuries from separate accidents and awards PPD for each accident, and that decision is not against the manifest weight of the evidence, it should also be affirmed.

I disagree, however, with the majority's suggestion that a different analysis applies when multiple claims for injuries to the same body part are tried at a consolidated arbitration hearing. Whether they are tried separately, or in a consolidated hearing, a claimant is entitled to separate consideration of multiple claims. By suggesting that the Commission should only consider the claimant's condition of ill-being at the time of the arbitration hearing, the majority tilts the analysis in favor of a single PPD award. In order to determine whether a claimant sustained separate compensable injuries in two accidents, the Commission must consider his condition of ill-being prior to the second accident. The result should not be different solely because multiple claims have been consolidated for hearing. See *Consolidated Freightways v. Industrial Comm'n*, 237 Ill. App. 3d 549, 604 N.E.2d 962 (1992) (An employer is not entitled to a credit for a prior PPD award to the same part of the back.).

However, in this case, because the decision of the Commission is not against the manifest weight of the evidence, I concur in the result reached by the majority.