THE CITY OF CHICAGO, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Thomas O'Rourke, Appellee).

First District (Workers' Compensation Commission Division)
No. 1—09—2320WC

Opinion filed April 11, 2011.—Rehearing denied May 13, 2011.

Gerald F. Cooper, of Scopelitis, Garvin, Light, Hanson & Feary, P.C., of Chicago, for appellant.

Daniel L. Collins, of Krol, Bongiorno & Given, Ltd., of Chicago, for appellee.

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.

Presiding Justice McCullough and Justices Hoffman and Hudson concurred in the judgment and opinion.

Justice Stewart concurred in part and dissented in part, with opinion.

## OPINION

The claimant, Thomas O'Rourke, sought workers' compensation benefits from his employer, the City of Chicago (the employer), for an injury to his lower back arising out of and in the course of his employment on August 27, 2002. The claim was designated as No. 02 WC 55088. While that claim was pending, the claimant returned to work and subsequently reinjured his lower back in an industrial accident on May 5, 2004. That claim was designated as No. 05 WC 34807. The two claims were heard in consolidated arbitration hearings on April 2, 2007, and April 25, 2007, pursuant to section 19(b) of the Workers' Compensation Act (the Act) (820 ILCS 305/19(b) (West 2002)). On July 17, 2007, the arbitrator issued separate decisions for each claim. In the August 27, 2002, injury claim, the arbitrator awarded reasonable and necessary medical expenses of $2,973.60 and permanent partial disability (PPD) benefits equal to 20% loss of the person as a whole pursuant to section 8(d)(2) of the Act. 820 ILCS 305/8(d)(2)

(West 2002). In the May 5, 2004, injury claim, the arbitrator awarded PPD benefits of $388 per week under a wage-differential determination pursuant to section 8(d)(1) of the Act. 820 ILCS 305/8(d)(1) (West 2002). In addition, on the May 5, 2004, accident claim, the arbitrator awarded $3,242 in reasonable and necessary medical expenses, $9,571.39 in penalties pursuant to section 19(k) of the Act (820 ILCS 305/19(k) (West 2002)), $2,500 in penalties pursuant to section 19(l) of the Act (820 ILCS 305/19(l) (West 2002)), and attorney fees of $3,828.55 pursuant to section 16 of the Act (820 ILCS 305/16 (West 2002)). The employer appealed to the Illinois Workers' Compensation Commission (Commission), which affirmed and adopted the arbitrator's decisions in both claims. The employer then sought review in the circuit court of Cook County, which confirmed the decision of the Commission. The employer then appealed to this court.

## BACKGROUND

On August 27, 2002, the claimant was working for the employer as a laborer in the sewer department. He was pushing a wheelbarrow containing approximately 80 bricks when he heard a pop in his lower back. The claimant reported the incident to his supervisor, who drove the claimant to the nearest hospital. The claimant was subsequently transported to a different hospital where an MRI scan was made of his lower back. He was diagnosed with an acute sciatica and a herniated disk at L4-L5.

On August 30, 2002, the claimant underwent a microdiscectomy at L4-L5 performed by Dr. Richard D. Lim. The claimant participated in postoperative physical therapy and received epidural steroid injections on January 16, 2003, and February 3, 2003. Dr. Lim performed a second microdiscectomy at L3-L4 on March 3, 2003. On June 27, 2003, the claimant underwent a functional capacity evaluation (FCE) which indicated that he could perform at the medium work level. The claimant went through a course of work hardening from July 1, 2003, to July 9, 2003, and was released to full duty by Dr. Lim on July 10, 2003.

The claimant testified that, upon his return to full-duty work in July 2003, his back was mostly free of pain. However, he experienced pain and muscle spasms in both legs on a daily basis. Upon return to work, the claimant performed the job without limitations.

The claimant worked without incident until May 5, 2004, when a trench that the claimant was working in partially collapsed on him. He remained in the trench for approximately 10 minutes while his coworkers dug him out. The claimant did not seek immediate medical attention after being extricated from the trench. However, he decided

to seek treatment at Mercy Works Hospital on May 28, 2004, due to pain in his lower back. The claimant was referred to Dr. Lim at Midwest Orthopedics, where he received a course of epidural steroid injections at L5 to treat nerve damage at L5. On December 28, 2004, the claimant underwent an FCE, which revealed that the claimant was still capable of performing at a medium work level.

The claimant remained off work until May 2, 2005, when he returned to work with the employer as a night watchman earning $17 per hour. His previous position as a laborer in the sewer department paid $29 per hour from June 1, 2004, to June 30, 2005, $30.15 per hour from July 1, 2005, to June 30, 2006, and $31.55 per hour from July 1, 2006, to June 30, 2007. The employer paid the claimant $19,142.97 in wage differential payments for the period from May 2, 2005, to March 31, 2006.

At the arbitration hearing, the City argued that the claimant was entitled to only one permanency award, maintaining that the claimant could not receive a permanency award under both section 8(d)(1) and section 8(d)(2) for the same injured lumbar spine. The arbitrator disagreed, citing *Consolidated Freightways v. Industrial Comm'n*, 237 Ill. App. 3d 549, 554 (1992), a case where the court upheld the Commission's denial of a credit for a previous award under section 8(e) against a subsequent person as a whole award under section 8(d)(2). The arbitrator also noted that the injuries were different in nature because the claimant had been able to return to work after the first injury but was precluded from returning to work after the second.

Regarding the awarding of penalties and attorney fees in No. 05 WC 34807, the arbitrator found that the employer had failed to pay the wage differential benefit from May 2, 2005, through March 31, 2006, without explanation for the delay. The claimant testified to great hardship being placed upon him by the employer's delay in promptly paying the wage differential benefit. The arbitrator, therefore, found that the employer's delay in paying the wage differential benefit was unreasonable and vexatious and assessed penalties and attorney fees pursuant to the Act.

The employer appealed the arbitrator's decision to the Commission, which affirmed and adopted the arbitrator's decision. The employer then sought review in the Cook County circuit court, which confirmed the decision of the Commission. The employer then filed a timely appeal to this court. On appeal, the employer raises three issues: (1) whether the Commission erred in awarding the claimant PPD benefits for both 20% of the person as a whole pursuant to section 8(d)(2) of the Act and a wage differential award pursuant to section 8(d)(1) of the Act for the same condition of ill-being of his lower

back; (2) whether the Commission erred in awarding medical expenses based upon the proofs presented at the hearing; and (3) whether the Commission erred in awarding the claimant penalties and attorney fees for unreasonable delay in the payment of benefits.

## DISCUSSION

### 1. Permanency

The employer maintains that the Act prohibits two permanency awards for the same current condition of ill-being even if that current condition of ill-being is the result of two separate industrial accidents. The employer presents a question of statutory interpretation, which is reviewed *de novo*. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 60 (1989).

The employer begins its argument by noting that at the consolidated hearing on both claims, the claimant presented no evidence to establish that each industrial accident caused separate and distinct conditions of ill-being. The record, according to the employer, merely established that the claimant had the same general complaint at the hearing, that his legs would spasm and go numb on a daily basis, which he had after he returned to work following the first accident. The employer also points out that the objective measurements of the claimant's functional work capacity was at the same level (medium) after the second accident as it had been before that accident. Moreover, the employer points out that the treatment after both industrial accidents was directed at the same region of the lumbar spine.

On the date of the hearing, according to the employer, there was no evidence presented to establish which current condition of ill-being was caused by which industrial accident. The claimant presented no evidence as to what current physical limitation, which pain, and which numbness came from which accident. No medical testimony was presented to describe which portion of the claimant's current condition of ill-being could be attributed specifically to each of the two accidents. In short, there was no way to separate and apportion the claimant's current condition of ill-being into two separate claims. Thus, the employer maintains, the claimant has only one permanency claim, and he must elect to proceed under either section 8(d)(1) or section 8(d)(2) of the Act, but not both. See *Freeman United Coal Mining Co. v. Industrial Comm'n*, 283 Ill. App. 3d 785, 791 (1996) (a claimant "is entitled to an award for *his disability* based on either wage differential *or* percentage of the person as a whole; claimant is not entitled to an award for both, whether or not he suffers from both a functional disability and a loss of earning capacity" (emphasis added and in original)). This conclusion comes from the express language of the statute, according to the court:

"Under the plain language of section 8(d), loss of earning capacity is addressed in both paragraphs 1 and 2. However, loss of earning capacity comes into play in paragraph 2 only when an employee has an impairment of earning capacity and elects to be compensated under paragraph 2, *e.g.*, chooses a percentage-of-the-person-as-a-whole award. The language is clear: 'or having resulted in an impairment of earning capacity, the employee *elects to waive his right to recover* under *** subparagraph 1.' (Emphasis added.) [Citation.] This election demonstrates that an employee cannot recover both a wage-differential and percentage-of-the-person-as-a-whole award but must choose between the two. There is no language in the statute that allows doubling or dual compensation under both provisions." *Freeman United*, 283 Ill. App. 3d at 790-91.

Here, the claimant had two claims seeking a permanency award for the same condition of ill-being from two different industrial accidents pending before the Commission. The employer maintains that, under the unique facts of this case, there were two accidents but only one current condition of ill-being, the numbness and pain in the legs resulting from injury to the lower back at L3-L4. That single condition of ill-being presents a single disability, either a functional disability (section 8(d)(2)) or a loss of earning capacity (section 8(d)(1)). See *Freeman United*, 283 Ill. App. 3d at 790.

The facts of this case present a case of first impression. None of the cases cited by either party involve the same factual situation. In *Consolidated Freightways*, relied upon by the Commission in the instant matter, the issue was whether the employer was entitled to a credit under section 8(e)(17) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(e)(17) (now 820 ILCS 305/8(e)(17)) for a previous settlement award for a prior injury to the same location. Noting that the statutory provisions for credit are to be narrowly interpreted, the *Consolidated Freightways* court held that a credit was not available "[s]ince a 'back' is not an enumerated 'member' under section 8(e), no credit is due respondent because of a prior injury, irrespective of whether the current injury is to the exact same area of the back." *Consolidated Freightways*, 237 Ill. App. 3d at 554.

Moreover, while the *Consolidated Freightways* court held that the employer was not entitled to a statutory credit for the previous injury settlement, it also found that the Commission's award of PPD benefits of 20% of the person as a whole, following the prior award of 15% of the person as a whole, was not against the manifest weight of the evidence since the evidence supported a finding that the second award was for a condition of ill-being directly attributable exclusively to the

second injury. *Consolidated Freightways*, 237 Ill. App. 3d at 556 (claimant's 1984 back condition had, by all accounts, resolved itself and was not a factor three years later when he suffered his current injury). Thus, the instant case is distinguishable from *Consolidated Freightways* in one very significant detail—here, at the time of the hearing, the first injury had not resolved itself and clearly was a factor when the claimant suffered the second injury. This fact is all the more significant in the instant matter because, as the employer points out, it is impossible to tell from the record which attributes of the claimant's current condition of ill-being are attributable to which of the two accidents. The *Consolidated Freightways* court did not have to address that question.

The claimant suggests that *Freeman United Coal Mining Co. v. Industrial Comm'n*, 99 Ill. 2d 487 (1984), is instructive. In *Freeman United*, the court was required to determine whether an employee who was receiving a statutory permanent total disability (PTD) benefit resulting from the amputation of both legs pursuant to section 8(e)(18) of the Act was eligible for an award of temporary total disability (TTD) benefits when he was injured in a subsequent industrial accident. *Freeman United*, 99 Ill. 2d at 490. The employer in *Freeman United* argued that an employee already declared permanently and totally disabled was thereby incapable of sustaining an additional disability beyond the previously declared total disability. *Freeman United*, 99 Ill. 2d at 491. The court disagreed, noting that section 8(e)(18) of the Act, which provides an automatic PTD benefit in specific cases involving the loss of both hands, both arms, both feet, both legs, both eyes, or any two thereof, created a statutory permanent total disability that had nothing to do with actual impairment of earning capacity. *Freeman United*, 99 Ill. 2d at 492-93. Thus, it was possible for a recipient of PTD benefits under section 8(e)(18) to receive additional benefits should he be injured again after returning to work.

The *Freeman United* court also rejected the employer's argument that the claimant's second injury was merely the same condition for which he was already receiving compensation. The claimant, who had both legs amputated below the knee, fell while at work and injured the left stump. Following the second accident, the claimant underwent surgery which prevented him from using his prosthesis, thus rendering him unable to work. *Freeman United*, 99 Ill. 2d at 490. The court noted that, "[a]lthough the second injury was to the same body part as the first, the test is not whether [the claimant] sustained a new or independent type of injury, as [the employer] suggests, but whether he suffered a second accident which caused further disability of a type which the law would recognize as compensable." *Freeman United*, 99

Ill. 2d at 498. The court then observed that the record clearly established that there was a clear distinction between the condition of ill-being attributable to the amputation after the first accident and the condition of ill-being after the second accident. The second accident caused a specific injury to the stump which resulted in his consequent inability to fit a prosthesis, thus disabling him from work. *Freeman United*, 99 Ill. 2d at 499. On this question, the instant matter is distinguishable from *Freeman United* in that there is nothing in the record to establish a clear distinction between the condition of ill-being attributable to the first accident and the condition of ill-being attributable to the second accident.

The employer suggests that *Gallianetti v. Industrial Comm'n*, 315 Ill. App. 3d 721 (2000), is instructive. However, *Gallianetti* is of limited utility in the instant matter as it addresses only the question of whether a claimant should receive an award under section 8(d)(1) or section 8(d)(2) for a single injury resulting from a single accident. *Gallianetti*, 315 Ill. App. 3d at 727. *Gallianetti* supports the proposition that a claimant in such circumstances is entitled to elect compensation under the more generous provision of section 8(d)(1). *Gallianetti*, 315 Ill. App. 3d at 729.

Based upon the foregoing, we find that the claimant is not entitled to an award under both section 8(d)(1) and section 8(d)(2) for the same condition of ill-being. Where a claimant has sustained two separate and distinct injuries to the same body part and the claims are consolidated for hearing and decision, unless there is some evidence presented at the consolidated hearing that would permit the Commission to delineate and apportion the nature and extent of permanency attributable to each accident, it is proper for the Commission to consider all the evidence presented to determine the nature and extent of the claimant's permanent disability as of the date of the hearing. See *Baumgardner v. Illinois Workers' Compensation Comm'n*, 409 Ill. App. 3d 274 (2011).

Here, the evidence presented at the hearing does not permit a delineation of a separate condition of ill-being attributable to each accident. Rather, the evidence established only one condition of ill-being, which can only be compensated as either a percent of the person as a whole, or as a wage differential. The claimant suggests that, had his claims been adjudicated separately he would have secured two separate awards. While that may have been true, it would be pure speculation to simply assume that the claimant would have recovered PPD benefits for both accidents. The fact that the claimant had returned to work after the first accident and performed in the full performance of his job is some indication that his first injury may have completely

resolved itself prior to the second injury. See *Archer Daniels Midland Co. v. Industrial Comm'n*, 99 Ill. 2d 275, 282 (1983) (claimant is not entitled to section 8(d)(2) award where there is no proof of permanent injury).

Justice Stewart, in his partial dissent, maintains that if we were to review the Commission's decision under the manifest weight of the evidence standard of review we would reach a different conclusion. We respectfully disagree. The evidence presented at both hearings established only that, after completion of a work-hardening program, the claimant was returned to work without restrictions following the first accident and that he worked without physical impairment or loss of earning capacity until the date of the second accident. The evidence presented at hearing established only that the claimant had suffered either a physical impairment or an impairment of earning capacity *after the second accident.* While it is possible that the claimant suffered a permanent physical impairment after the first accident, given his return to work without restriction and the lack of any evidence supporting a finding that the claimant suffered physical impairment after the first accident, a finding that the claimant suffered permanent physical impairment after the first accident would be purely speculative and thus against the manifest weight of the evidence.

Since the claimant sought and proved entitlement to a wage differential award, we affirm that award. *Gallianetti*, 315 Ill. App. 3d at 729. We vacate the award of 20% loss of the person as a whole pursuant to section 8(d)(2) of the Act.

## 2. Medical Expenses

The employer maintains that the Commission erred in awarding reasonable and necessary medical expenses. The employer posits that some of the medical invoices submitted at the hearing were not accompanied by evidence showing if any of the outstanding balances had been waived by the healthcare providers. The employer maintains that the Commission should determine whether the amount billed had actually been paid. The claimant responds by referring to the parties' stipulation that "all bills paid pursuant to contract" and the employer's attorney's comment at the hearing that "[i]t is my belief that several of those might be balance billing as a result of the agreement between any of these doctors and the [employer], and we would just want credit for anything that's determined to be paid when we figure out the award in this matter."

Under section 8(a) of the Act, the claimant is entitled to recover reasonable medical expenses that are causally related to the accident and that are determined to be required to diagnose, relieve, or cure

the effects of a claimant's injury. *University of Illinois v. Industrial Comm'n*, 232 Ill. App. 3d 154, 164 (1992). The claimant has the burden of proving that the medical services were necessary and the expenses incurred were reasonable. *F&B Manufacturing Co. v. Industrial Comm'n*, 325 Ill. App. 3d 527, 534 (2001). Whether an incurred medical expense was reasonable and necessary and should be compensated is a question of fact for the Commission, and the Commission's determination will not be overturned unless it is against the manifest weight of the evidence. *University of Illinois*, 232 Ill. App. 3d at 164. Here, the record established that some medical invoices had been paid in full and some might have been reduced by the providers pursuant to an agreement between those providers and the employer. At oral argument before this court, counsel for both parties agreed that some medical expenses may have been paid in full and, thus, would be presumptively reasonable. Given the state of the record and the position of the parties before this court, we remand the matter to the Commission to determine which medical expenses were reasonable and necessary expenses.

### 3. Penalties and Attorney Fees

The employer next challenges the Commission's award of penalties and attorney fees as a result of the employer's unreasonable and vexatious delay in paying a wage differential benefit after the claimant returned to work as a night watchman following the second accident. The Commission found that the employer should have commenced payment of the wage differential award on May 2, 2005, the date on which the claimant returned to work as a night watchman. However, the employer did not commence payment until March 31, 2006. At the hearing, the employer offered no explanation for the delay. The Commission found this delay to be unreasonable and vexatious. On appeal, the employer suggests that the delay was due to the bureaucratic nature of the employer, and the delay was not the result of bad faith or an improper motive. See *Swift-Eckrich v. Industrial Comm'n*, 355 Ill. App. 3d 708 (2005).

When an employer chooses to delay payment of compensation, it has the burden of showing that it had a reasonable belief that the delay was justified. *Roodhouse Envelope Co. v. Industrial Comm'n*, 276 Ill. App. 3d 576, 579 (1995). Whether an employer acts unreasonably or vexatiously in failing to pay benefits is a question of fact to be determined by the Commission, and such findings will not be disturbed by a reviewing court unless the determination is against the manifest weight of the evidence. *Roodhouse*, 276 Ill. App. 3d at 579.

Here, it cannot be said that the Commission's finding that the employer failed to establish a reasonable basis for its delay in paying a wage differential benefit after the claimant returned to work as a night watchman was against the manifest weight of the evidence. When the claimant returned to employment at $17 per hour, it was significantly less than his previous earning capacity. A claimant's entitlement to a wage differential is determined by when the claimant is employed with a reduced earning capacity. See *Payetta v. Industrial Comm'n*, 339 Ill. App. 3d 718, 721 (2003). The employer paid the claimant a wage differential benefit. However, it waited over 10 months to commence payment. At the hearing, the employer gave no reason for the delay. On appeal, the employer maintains that the delay was the result of mere bureaucratic inertia. The employer does not maintain that it had a reasonable basis to believe that the claimant was not entitled to begin receiving a wage differential benefit when he returned to work as a night watchman, nor did it assert a reasonable belief that it was not required to pay a wage differential. In fact, it gave no explanation for the delay.

Given the employer's failure to justify the delay in payment of the wage differential benefit, it cannot be said that the Commission's award of penalties and attorney fees was against the manifest weight of the evidence.

## CONCLUSION

The order of the circuit court of Cook County confirming the Commission's award of a wage differential pursuant to section 8(d)(1) of the Act is affirmed, the award of 20% of the person as a whole pursuant to section 8(d)(2) of the Act is vacated, the award of penalties and attorney fees is affirmed, and the award of medical expenses is reversed and remanded to the Commission for further proceedings.

Affirmed in part, vacated in part, and reversed in part; cause remanded to the Commission.

JUSTICE STEWART, concurring in part and dissenting in part:

I concur in all aspects of the majority decision except the determination that the Commission's award of 20% of the person as a whole under section 8(d)(2) of the Act should be vacated. From that portion of the majority decision, I respectfully dissent.

In my view, the decision of the majority is based upon a faulty premise. The majority has determined that "the evidence presented at the hearing does not permit a delineation of a separate condition of ill-being attributable to each accident." 409 Ill. App. 3d at 265. Treating

the outcome of the claimant's two accidents as one indivisible injury, the majority frames the issue as a matter of statutory construction, to be reviewed *de novo*, and determines, as a matter of first impression, that a claimant involved in multiple accidents resulting in one condition of ill-being is entitled to only one permanency award under section 8(d) of the Act. 820 ILCS 305/8(d) (West 2002). I agree with the majority's statutory interpretation, under *de novo* review, which determines that a claimant with multiple injuries to the same body part resulting in one condition of ill-being may recover only one award for permanent partial disability (PPD). However, whether a claimant suffers from one condition of ill-being or has sustained separate compensable injuries is a factual determination to be made by the Commission which should be reviewed under the manifest weight of the evidence standard. The record does not support the majority's assertion that the claimant failed to prove a separate condition of ill-being for each accident in this case. The decision of the Commission allowing a separate PPD award for each accident was not against the manifest weight of the evidence. It is the inconsistency between the legal principle established by the majority, and its application to the facts of this case, that is the basis for my dissent.

Any suggestion by the majority that the claimant testified only about his current condition of ill-being, at a consolidated hearing, based upon two accidents, is not supported by the record. As the majority notes, the claimant's two back injury claims were heard by the arbitrator in a consolidated hearing on April 2, 2007, and April 25, 2007. This observation does not fully reflect, however, what happened at those hearings. On April 2, 2007, the parties appeared at the arbitration hearing prepared to proceed only on the August 27, 2002, accident and a separate claim for an ankle injury which is not involved in this appeal. The parties only submitted request for hearing forms for those two claims. At the commencement of the hearing, the employer's attorney advised the arbitrator of the claimant's additional claim for the accident which had occurred on May 5, 2004, which had been assigned to a different arbitrator. The employer's attorney then orally moved for consolidation of the claims pursuant to title 50, section 7030.10 of the Administrative Code. 50 Ill. Adm. Code 7030.10 (2010). Under that section, if a claimant files a subsequent claim against the same employer, the subsequent claim is to be assigned to the arbitrator hearing the first claim filed. 50 Ill. Adm. Code 7030.10 (2010). Without an objection from the claimant, the arbitrator consolidated the claims. However, since the parties had not anticipated the consolidated hearing and had not even filed a request for hearing for the May 5, 2004, accident, the testimony at the April 2, 2007, hear-

ing was limited to the accident which occurred on August 27, 2002. At the first hearing, the claimant's attorney only sought to question him about his injuries and condition of ill-being which resulted from the August 27, 2002, accident. Although the claimant did testify, on cross-examination, that he had hip problems that did not commence until after the second accident, the claimant did not specifically address the May 5, 2004, accident and the condition of ill-being which resulted from that injury until the April 25, 2007, hearing.

At the April 25, 2007, hearing, the parties first filed the request for hearing form for the May 5, 2004, accident. Then, the claimant testified, and his testimony on that occasion was limited to the accident on May 5, 2004, and his injuries and condition of ill-being after that accident. At the conclusion of the claimant's testimony, his attorney offered multiple exhibits, which included medical records from both accidents. The medical records were clearly segregated between the two accidents. Neither of the parties offered any medical testimony. The employer offered no testimony and no exhibits. The claimant's testimony about his injuries and conditions of ill-being related to the two separate accidents was clearly separated between the two dates of hearing. In fact, he was never asked, at either hearing, whether his condition was the same or different after the two injuries.

While it is true that the claimant injured the same area of his lower back in each accident, and testified to similar symptoms after each injury, a careful examination of his testimony, and the medical records admitted into evidence, reveals that his condition of ill-being changed after the second accident. After the August 27, 2002, injury, the claimant had two surgeries, a microdiscectomy at L4-L5 on August 30, 2002, and a microdiscectomy at L3-L4 on March 3, 2003. He then commenced physical therapy. An FCE conducted on June 27, 2003, found that he was capable of medium work. However, the recommendation contained in the FCE report was that the claimant attend a work-hardening program. After he attended work-hardening, Dr. Lim released him to return to work without restrictions. The claimant returned to his regular job and was able to work his regular duties for ten months before his accident on May 5, 2004. After the second accident, he was again treated by Dr. Lim who concluded that epidural injections were not helping and that he was not a candidate for additional surgery. Another FCE was performed on December 28, 2004, which again concluded that the claimant could work at a medium level. This time, however, rather than refer him for work-hardening, the FCE report concluded that the claimant was "not capable of performing his pre-injury job of a water distribution laborer." On January 5, 2005, Dr. Lim released him to return to work, but with the

permanent restrictions set forth in the FCE report. Upon his return to work, the claimant was placed in a lower paying job.

Based upon the foregoing, the arbitrator found as follows: "While Petitioner was able to return to work after the first injury, he was precluded from returning to his regular course of employment after the second injury. Clearly, Petitioner's medical condition worsened after the second injury." Thus, the arbitrator found from the evidence that the claimant's condition of ill-being was different after the two accidents. Accordingly, the claimant was awarded PPD of 20% of the person as a whole under section 8(d)(2) of the Act for the disability suffered in the August 27, 2002, injury which caused him to suffer physical impairment but no impairment of earning capacity. For the May 5, 2004, injury the claimant was given a wage differential award under section 8(d)(1) of the Act because the disability resulting from that injury caused an impairment of earning capacity. The Commission unanimously affirmed and adopted the findings of the arbitrator on both claims.

It is the function of the Commission to determine questions of fact. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221, 223 (1980). "Though a court might draw different inferences from the evidence, it is axiomatic that findings of the \*\*\* Commission will not be reversed unless they are against the manifest weight of the evidence." *O'Dette*, 79 Ill. 2d at 253, 403 N.E.2d at 224. "In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896 (1992).

Here, the Commission made a factual determination that the claimant's condition of ill-being was different after the second accident, and the evidence supports that finding. After the first accident, the claimant was able to return to his full duties. At that time, he suffered physical impairment but no impairment of earning capacity. As a result, an award of PPD under section 8(d)(2) of the Act was appropriate for that injury. 820 ILCS 305/8(d)(2) (West 2002). After the second accident, his condition worsened and he was unable to return to his previous employment. He clearly suffered an impairment of earning capacity after the second accident, justifying a wage differential award under section 8(d)(1) of the Act. 820 ILCS 305/8(d)(1) (West 2002). The Commission plainly found that the claimant proved that he suffered from one condition of ill-being after the August 27, 2002, accident and a separate condition of ill-being after the May 5, 2004, accident.

Under the guise of *de novo* review, however, the majority simply states that "the evidence established only one condition of ill-being."

409 Ill. App. 3d at 265. Although the claimant had two separate back surgeries after the first accident, the majority determines that "given his return to work without restriction and the lack of any evidence supporting a finding that the claimant suffered physical impairment after the first accident, a finding that the claimant suffered permanent physical impairment after the first accident would be purely speculative." 409 Ill. App. 3d at 266. Presumably, under the majority analysis, a worker whose injury requires two back surgeries, but is able to return to his employment, has failed to prove *any* permanent physical impairment. Whether the claimant's two accidents resulted in only one condition of ill-being is a factual determination which should be decided by the Commission. The findings of the Commission should be reviewed under the manifest weight of the evidence standard, and they are clearly supported by the evidence.

It is difficult to ascertain what more the claimant could have done to separate the results of his two injuries. He testified about each accident and his resulting condition on separate hearing dates. The medical exhibits submitted were clearly separated between the two accidents. After the first accident he was able to return to full duties, while after the second accident he had permanent restrictions. Under the majority analysis, regardless of the different effect the claimant's injuries have upon his earning capacity, if he testifies that he had similar symptoms after each injury, he has only proved one condition of ill-being. This analysis could be applied to virtually all claimants with multiple back injuries. It can be argued that, under the majority opinion, any claimant with multiple back injuries can only obtain one recovery.

The majority's conclusion, under *de novo* review, that the claimant may only obtain one recovery for multiple back injuries, is in direct conflict with this court's decision in *Consolidated Freightways v. Industrial Comm'n*, 237 Ill. App. 3d 549, 604 N.E.2d 962 (1992). In *Consolidated Freightways*, the claimant, a dockhand, suffered a lower back injury in 1984 and was treated by chymopapain injection. After seven months of recuperation, he returned to his usual employment and performed his regular job duties. The 1984 claim was settled, in part, for an award of 15% loss of the person as a whole under section 8(d)(2) of the Act. In 1987, the claimant suffered another work-related injury to the same disc location. The second injury resulted in a surgical procedure. The claim for the second injury proceeded to arbitration and the claimant was awarded, in part, an award of 20% of the person as a whole under section 8(d)(2) of the Act. On appeal, the employer argued that it should receive a credit for the prior award since the exact same part of the body had been injured. This court correctly

denied the employer any credit for the award for the first injury, holding that the Act only provides for a credit for a prior injury to a specific body part listed in section 8(e).

In my view, the majority decision effectively allows the employer a credit for the claimant's prior back injury by allowing him only one recovery, that being for his condition of ill-being after the second injury. The only distinction between the majority decision in this case and *Consolidated Freightways* is that, here, the two claims were heard in a consolidated hearing, while the claimant in *Consolidated Freightways* managed to settle his first claim before the second one proceeded to arbitration. There is little doubt that, under *Consolidated Freightways*, the claimant in this case would be entitled to both awards if he had received a settlement or an award under section 8(d)(2) of the Act for his August 27, 2002, injury prior to an arbitration hearing on the claim for his May 5, 2004, injury. Claims should not be decided based upon such fortuitous circumstances. A claimant is entitled to separate consideration of each of his claims at a consolidated hearing.

Finally, contrary to the majority's assertion, *Freeman United* provides further support for the decision of the Commission. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 99 Ill. 2d 487, 459 N.E.2d 1368 (1984). In that case the employer argued that the Commission's finding that the second injury "was a separate accident rather than a continuation of the original injury [the claimant] suffered [was] against the manifest weight of the evidence." *Freeman United*, 99 Ill. 2d at 498, 459 N.E.2d at 1374. It is in that context that the court stated: "Although the second injury was to the same part of the body as the first, the test is not whether [the claimant] sustained a new or independent type of injury, as Freeman suggests, but whether he suffered a second accident which caused further disability of a type which the law would recognize as compensable." *Freeman United*, 99 Ill. 2d at 498, 459 N.E.2d at 1374. Despite the disability resulting from the amputation of both legs below the knee in his first accident, the claimant in *Freeman United* had continued to be employed. After the second accident, he was unable to work and suffered a lost earning capacity. Because the claimant suffered a "further disability of a type which the law would recognize as compensable," an inability to work, the *Freeman United* court held that the Commission's finding that his second accident was not "a continuation of the original injury" was not against the manifest weight of the evidence. *Freeman United*, 99 Ill. 2d at 498, 459 N.E.2d at 1374.

The same is true in this case. In the first accident the claimant suffered a physical impairment, but no lost earning capacity. After the second accident, he was unable to return to his regular duties and suf-

fered a lost earning capacity. As in *Freeman United*, the decision of the Commission that the claimant's second injury was not a continuation of his original injury was not against the manifest weight of the evidence.

As a result of its failure to give deference to the factual determinations of the Commission in this case, the majority sets forth no clear standard to determine when a claimant with multiple back injuries is entitled to only one recovery. The evidence of record in these claims is typical of workers with multiple back injuries. Whether two accidents are a continuation of the same injury or result in separate conditions of ill-being is a factual determination which should be made by the Commission. That determination should not be reversed unless it is against the manifest weight of the evidence.

For the foregoing reasons, I would affirm in its entirety the judgment of the circuit court, confirming the decision of the Commission.